Jovan D. JAMES, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CO–704.

District of Columbia Court of Appeals.

Argued Oct. 24, 2012.

Decided Jan. 24, 2013.

Fletcher P. Thompson, Crownsville, MD, for appellant.

Shane W. Waller, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at time brief was filed, Elizabeth Trosman and Margaret J. Chriss, Assistant United States Attorneys, were on brief, for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant, Jovan D. James, appeals from a denial of an attack on his sentence of thirty years to life imprisonment, arguing that the mandatory thirty-year minimum, D.C.Code § 22–2404 (1996 Supp.)[1] imposed upon him, a minor at the time of the crime, violates the Eighth Amendment as interpreted under *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1

(2005), *Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).[2] He asserts that even though these decisions were decided after appellant's conviction became final, his current challenge to his sentence is governed by these recent Supreme Court holdings. We need not decide whether the trial court should have applied those decisions retroactively, because even had the trial court done so, those decisions would not apply to appellant's sentence. In addition, we are not persuaded by appellant's contention that the sentence imposed on him was "grossly disproportionate" to his crime, a premeditated, execution-style murder of a twelve-year-old rival gang member. Thus, we affirm the trial court's decision.

## I.

Appellant was part of a gang in an area of southeast Washington, D.C. During the fall of 1996 and into the early part of 1997, appellant's gang became involved in a shooting war with a rival gang from a nearby neighborhood. At some point during the shooting war, appellant, along with other former codefendants, became particularly upset at two members of the rival gang, twelve-year-old Darryl Hall and his fourteen-year-old brother, D'Angelo Hall. Appellant and the other members of his gang believed the Hall boys were responsible for some of the shooting, and called the Hall household to warn the young brothers to stay out of the escalating conflict.

On January 15, 1997, appellant and three others waited for the Hall brothers to leave school, where they knew the boys

1. Citations to the D.C.Code in this opinion refer to the 1996 Supplement to the 1981 codification, which was in force at the time appellant committed the crime.

2. *Miller* was decided after appellant's motion was heard by the trial court. We include *Miller* in our consideration of appellant's contentions.

would be unarmed. Once they saw the boys leave the school, appellant and the others gave chase, eventually catching up with the younger Darryl Hall. Appellant and the others forced Darryl Hall into their waiting car and drove to an apartment in their neighborhood. Here, appellant retrieved a firearm and returned to the car. The group then drove a short distance away to a wooded area, where appellant walked Darryl Hall into a ravine, shot him twice, once in the back of the leg and once in the head, and returned to the car.

Appellant was charged as an adult with first-degree murder while armed, premeditated. Appellant pleaded guilty to first-degree murder while armed, premeditated, and was sentenced to the mandatory minimum of thirty years to life in prison, becoming eligible for parole only after thirty years have been served. Since he was sentenced, appellant has unsuccessfully filed several motions attacking his sentence.

Appellant began this current attack in December 2010, by filing an "Opening Brief with Appendix" that the trial court construed as a motion to correct an illegal sentence under Super. Ct.Crim. R. 35(a). Appellant argued that his sentence of thirty years to life imprisonment was illegal in light of *Roper* and *Graham*. The trial court distinguished *Roper* and *Graham* from appellant's sentence, reasoning that even if they applied retroactively, appellant would not fit into either protected category as his sentence is not death (as in *Roper*) and his crime was homicide (unlike *Graham*). Finally, the trial court held that appellant's punishment is not grossly disproportionate to his crime, and thus does not violate the Eighth Amendment's prohibition on Cruel and Unusual Punishment.

Appellant filed this timely appeal.

## II.

Appellant contends that the mandatory minimum of thirty years in prison required by D.C.Code § 22–2404 (1996 Supp.) violates the Eighth Amendment. He focuses primarily on the Court's emphasis on the mitigating factors of youth, arguing that the District's sentencing scheme failed to take his youth into account. However, contrary to appellant's argument, *Roper, Graham,* and *Miller* do not apply to his sentence. Because he does not fit into the categorical exceptions of *Roper, Graham,* or *Miller,* appellant is forced to argue that his sentence is grossly disproportionate to his crime, which he cannot succeed in doing.

The Eighth Amendment's Cruel and Unusual Punishment Clause clearly prohibits barbaric forms of punishment under all circumstances. *See Hope v. Pelzer,* 536 U.S. 730, 737–38, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Most of the Supreme Court's precedents in this area deal with punishments challenged as disproportionate to the crime. *Graham, supra,* 130 S.Ct. at 2021. The Court addresses the proportionality of sentences in two main contexts: cases where the Court has imposed categorical restrictions on the imposition of the death penalty and life imprisonment without opportunity for parole, and cases where term-of-years sentences are challenged based on the circumstances of that particular case. *Id.*

### A.

The Supreme Court has utilized the categorical approach to Eighth Amendment challenges in two basic contexts, determining that for certain classes of offenses and offenders the death penalty is always disproportionate. *Id.* at 2022. With regard

to the nature of the offense, the Court has concluded that the death penalty is always disproportionate for non-homicide crimes against individuals. *See, e.g., Kennedy v. Louisiana,* 554 U.S. 407, 413, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008); *Enmund v. Florida,* 458 U.S. 782, 797, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). The Court has also carved out several categories of offenders for whom it deems the death penalty always disproportionate, among them: offenders who commit their crimes before reaching eighteen years of age ("juveniles"), *Roper, supra,* 543 U.S. at 571, 125 S.Ct. 1183; and individuals with low intellectual functioning, *Atkins v. Virginia,* 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Recently, the Court applied the categorical approach to prohibit a sentence of life imprisonment without parole for juveniles guilty of non-homicide offenses, *Graham, supra,* 130 S.Ct. at 2030 and to prohibit the imposition of a mandatory sentence of life imprisonment without parole for juveniles guilty of homicide, *Miller, supra,* 132 S.Ct. at 2465.

Appellant's reliance on *Roper, Graham,* and *Miller* is misplaced, as each can be factually distinguished from the present case. In *Roper,* the Court held that the Eighth Amendment prohibits the execution of individuals who committed a capital offense before they turned eighteen years old. *Roper, supra,* 543 U.S. at 571, 125 S.Ct. 1183. *Graham* followed *Roper,* holding that the Eighth Amendment prohibits the imposition of life imprisonment without opportunity for parole against juveniles guilty of non-homicide crimes. *Graham, supra,* 130 S.Ct. at 2030. The *Graham* Court viewed a sentence of life-imprisonment without the opportunity for parole of comparable severity and magnitude as a sentence of death—even though the State does not execute the offender, "the sentence alters the offender's life by a forfeiture that is irrevocable." *Id.* at 2027. Lastly, *Miller,* the most recent decision in the categorical exception line, adopts *Graham's* rule that "youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." *Miller, supra,* 132 S.Ct. at 2465. The Court held that mandatory sentences of life imprisonment without the opportunity for parole are cruel and unusual when applied to all juvenile offenders. *Id.* at 2464–66.

*Roper* does not apply here because appellant has not been sentenced to death. Appellant does not fit into the *Graham* category either, as he was convicted of homicide. But even had he been convicted of a non-homicide offense, dicta in *Graham* suggest that a sentence like appellant's would not violate the Eighth Amendment's ban on cruel and unusual punishment. The *Graham* Court noted that the "Eighth Amendment ... does not require the State to release [a juvenile non-homicide offender] during his natural life." 130 S.Ct. at 2030. The Eighth Amendment only requires the State to give the juvenile non-homicide offender "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* In this case, appellant will have that opportunity after the thirty-year minimum sentence has been completed. Nor does appellant fit into the *Miller* category. Even though his sentence included a mandatory minimum of thirty years, he was not sentenced to a mandatory term of life imprisonment without opportunity for parole. Appellant stressed the mandatory nature of his sentence in his brief, but a mandatory minimum of thirty years is different in kind than a mandatory minimum

of life in prison.[3] In shaping this area of law, the Court has focused on the similarities of life in prison without parole to the death penalty. With a sentence of life in prison without parole, a juvenile offender is guaranteed to die in prison. Appellant's mandatory minimum sentence of thirty years does not necessarily entail that drastic consequence; it affords appellant hope of release.

## B.

In addition to the term of years element of his mandatory sentence, appellant takes issue with the mandatory nature of his sentence, arguing that it does not allow the sentencer to take into account the "mitigating qualities of youth" that formed the basis for the Court's decisions in *Roper, Graham,* and *Miller.* Appellant received the harshest penalty available under D.C. law for a juvenile offender; the death penalty is not available at all in the District of Columbia nor may a sentence of life without parole be given to a juvenile offender. *See* D.C.Code § 22–2404(a) (1996 Supp.). Because appellant's sentence is the "default" sentence for first-degree murder,[4] he argues that the sentencer is not able to consider the "mitigating qualities of youth" so integral to the Court's decisions in *Roper, Graham,* and *Miller.*

 *Miller* comes close to supporting appellant's argument. The *Miller* Court faced state statutes that required mandatory sentences of life imprisonment without parole for juvenile offenders found guilty of first-degree murder. Trial courts were thus unable to consider the individual juvenile's youth when sentencing, unable to account for the youth's increased susceptibility to peer pressure, immaturity, lack of responsibility for his own actions, failure to appreciate the consequences for his behavior, and impetuousness, among other factors. *See Miller, supra,* 132 S.Ct. at 2468. Broadly speaking, the consideration of individual circumstances is what led to the Court's prohibition of mandatory imposition of the death penalty for first-degree murder. *See Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) ("[W]e believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." (internal quotations and citations omitted)). *Graham* and *Miller* both highlight the similarities between life imprisonment without opportunity for parole and the death penalty, especially with regards to juveniles. *See Miller, supra,* 132 S.Ct. at 2465; *Graham, supra,* 130 S.Ct. at 2027. For the same reasons we require individualized sentencing when imposing the death penalty, we must take a juvenile offender's age and attendant mitigating characteristics into account when imposing the harshest possible penalty, life imprisonment without opportunity for pa-

---

**3.** Appellant extrapolates from *Graham, Roper,* and *Miller* that despite their limitation to sentences of life without parole, the considerations announced as paramount—including "immaturity, impetuosity and failure to appreciate risks and consequences," *Miller, supra,* 132 S.Ct. at 2468—apply equally to a mandatory thirty years to life sentence. But should we follow his suggestion, it is not clear

where this slope would end for it would seem that the same infirmity in thirty years would exist for a lesser but still substantial term.

**4.** Prosecutors seeking life imprisonment without opportunity for parole against adult offenders must give extra notice thirty days prior to trial. D.C.Code § 22–2404(a) (1996 Supp.).

role. *See Miller, supra,* 132 S.Ct. at 2466–68.

 Appellant argues that the mandatory minimum term of years required for his sentence does not allow the sentencer to consider the "mitigating qualities of youth," as stressed in *Miller.* But, under the D.C.Code, the D.C. Council and the Executive Branch have already considered youth and its attendant factors, by limiting the minimum sentence to thirty years for offenders under the age of eighteen at the time of their offense, as compared to life imprisonment without opportunity for release which is available against adults. D.C.Code § 22–2404(a) (1996 Supp.). *Miller* and *Graham* demand consideration of the mitigating qualities of youth when imposing sentences of life in prison without opportunity for parole. In this jurisdiction, sentencing is a joint exercise by the legislative, executive, and judicial branches.[5] Because the sentencing statute already takes a juvenile offender's youth into account, the mandatory nature of appellant's sentence does not violate the Cruel and Unusual Punishment Clause of the Eighth Amendment.

In addition, we note that the trial judge, despite the mandatory nature of the sentence, nonetheless referred the matter for report and sentencing on the theory that upon application for parole after service of thirty years matters in mitigation would be available for consideration by the parole authorities in addition to any evidence of maturity and rehabilitation as might occur during service of the thirty-year mandatory minimum sentence.

## C.

 In addition to examining appellant's Eighth Amendment challenge through the Supreme Court's categorical approach, we will also consider all of the circumstances of this case to determine if the sentence is "unconstitutionally excessive." *See Graham, supra,* 130 S.Ct. at 2021. The Eighth Amendment "does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are *grossly disproportionate* to the crime." *Graham, supra,* 130 S.Ct. at 2021 (citing *Harmelin v. Michigan,* 501 U.S. 957, 997, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy J., concurring in part and concurring in judgment) (internal quotations omitted) (emphasis added)); *Crawford v. United States,* 628 A.2d 1002, 1004 (D.C.1993). Importantly, we must begin by comparing the gravity of the offense with the severity of the sentence, keeping in mind that in many cases it "has been difficult for the challenger to establish a lack of proportionality." *Graham, supra,* 130 S.Ct. at 2021 (referencing, e.g., *Ewing v. California,* 538 U.S. 11, 29–31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (upholding California three-strike recidivist sentencing scheme that sent a man to prison for life where his third offense was stealing golf clubs from a golf pro shop)).

 Appellant argues that a minimum sentence of thirty years before being eligible for parole violates the Cruel and Unusual Punishment Clause. Appellant kidnapped a twelve-year-old boy, drove to an apartment, retrieved a gun, drove to the woods, marched the boy into the middle of

---

**5.** "It is settled law that a sentencing court has no authority to impose a sentence of a nature or in a manner not authorized by statute." *Olden v. United States,* 781 A.2d 740, 742 (D.C.2001) (quoting *Clayton v. United States,* 429 A.2d 1381, 1383 (D.C.1981)). Indeed, the "statutory boundaries of criminal sentences are 'peculiarly questions of legislative policy.'" *Maye v. United States,* 534 A.2d 349, 350 (D.C.1987) (quoting *United States v. Bridgeman,* 173 U.S.App.D.C. 150, 172, 523 F.2d 1099, 1121 (1975)).

the woods, and shot him twice, once in the leg and once in the back of the head, an "execution style" murder. We are hard pressed to say that appellant's sentence of thirty years to life in prison is grossly disproportionate to the crime he committed. *See generally, Walle v. State,* 99 So.3d 967 (Fla.Dist.Ct.App.2012) (unreported opinion) (distinguishing *Miller* and *Graham* to find that juvenile offender's combined sentences of sixty-five years did not violate the Eighth Amendment); *People v. Gutierrez,* —— Cal.App.4th ——, 147 Cal. Rptr.3d 249 (2012) (upholding juvenile offender's sentence of life without parole and distinguishing *Miller,* as the California statute allowed for but did not mandate a life without parole sentence for juveniles convicted of homicide).

The viciousness of the execution-style murder supports appellant's sentence. Even though appellant does not fit into one of the *Roper, Graham,* or *Miller* categories, the principles forming the base of those opinions inform our analysis of the totality of the circumstances surrounding appellant's sentence. *Miller, Roper,* and *Graham* support the principle that youthful offenders do not deserve the maximum punishment because of their inherently lower culpability. Those maximum punishments are reserved for the most heinous crimes and the most culpable offenders. Appellant's crime was heinous. And he may be less culpable than an adult would have been in similar circumstance because of his youth and the mitigating factors attendant to youth, such as susceptibility to peer pressure. However, appellant did not receive the maximum punishment available under District of Columbia law. That punishment is life without parole, which can be imposed upon adult offenders guilty of first-degree murder. D.C.Code § 22–2404(a) (1996 Supp.). The legislature has already taken appellant's— and other future offenders'—youth into ac-

count by precluding a sentence of life imprisonment without opportunity for release from being imposed upon juvenile offenders. *Id.*

For the foregoing reasons, the order of the trial court is hereby

*Affirmed.*