IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JUSTIN BURRELL, | § | |
| | § | No. 302, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. K9805012046 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 12, 2018
Decided: March 11, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.


Edward C. Gill, Esquire, Georgetown, Delaware for Appellant Justin Burrell.

John R. Williams, Esquire, Department of Justice, Dover, Delaware for Appellee State of Delaware.

**TRAYNOR,** Justice:

Following a Superior Court jury trial, Appellant Justin Burrell—who was three months shy of his eighteenth birthday at the time the crimes were committed—was convicted of first-degree murder, manslaughter, first-degree robbery, second-degree burglary, second-degree conspiracy, and four counts of possession of a firearm during the commission of a felony ("PFDCF"). He was sentenced to life imprisonment without the possibility of probation or parole for the first-degree-murder charge plus 50 years' imprisonment for the remaining charges. In 2012, the United States Supreme Court decided *Miller v. Alabama*,[1] which declared unconstitutional mandatory life imprisonment without the possibility of parole for juvenile offenders. In response to this ruling, the Delaware General Assembly enacted legislation modifying the juvenile sentencing scheme. Under the new statute, 11 *Del. C.* § 4209A,

> [a]ny person who is convicted of first degree murder for an offense that was committed before the person had reached the person's eighteenth birthday shall be sentenced to [a] term of incarceration not less than 25 years to be served at Level V up to a term of imprisonment for the remainder of the person's natural life to be served at Level V without benefit of probation or parole or any other reduction.[2]

At his resentencing, Burrell did not contest the applicability of § 4209A's 25-year minimum mandatory sentence to his first-degree-murder conviction, but argued

---

[1] 567 U.S. 460 (2012).
[2] 11 *Del. C.* § 4209A.

that the court should not impose any additional statutory minimum mandatory incarceration for his five other convictions (first-degree robbery, second-degree burglary, and the three counts of PFDCF) on the grounds that such additional sentences would run afoul of *Miller*. The Superior Court disagreed and resentenced Burrell to the minimum mandatory 25 years' imprisonment for the first-degree-murder charge plus an additional minimum mandatory 12 years' incarceration for the other offenses. In this appeal, Burrell broadens his challenge, arguing that the Superior Court erred when it imposed the 25-year minimum mandatory sentence for the first-degree-murder charge and the additional 12 years for the companion offenses. Further, he claims that the sentencing statutes are unconstitutionally "overbroad." For the reasons that follow, we affirm the Superior Court's judgment.

I

William Davis was living in a mobile home located north of Dover with Dan and Dolly Fenwick and the Fenwicks' nine-year-old son, Danny. Davis, who sold marijuana while he lived with the Fenwicks, kept approximately $20,000 in cash in a safe under his bed. In April 1998, Davis' former roommate, William Scott, observed Davis remove $4,500 in cash from the safe to purchase a car.

In May 1998, Scott developed a plan to steal Davis' money. He enlisted the help of Burrell, who was then seventeen years old, to carry out the robbery plan. Scott provided Burrell with a hand-drawn map of the intended robbery location. On

3

May 18, 1998, the two went to the trailer park so that Scott could point out the Fenwick residence to Burrell. The following morning, Scott gave Burrell a backpack and a handgun. Burrell left Scott's home and proceeded to the Fenwick residence.

Burrell arrived at the Fenwick residence dressed in a wig, hat, sunglasses, and his sister's makeup. With the gun in his hand, Burrell knocked on the door and forced his way inside when Dolly answered. Danny, who had stayed home sick from school that day, observed Burrell hit his mother with the gun and drag her into Davis' bedroom. Upon entering the room, Danny heard Burrell repeatedly ask "where is it?" and "I'll shoot Danny, too." After a gunshot was fired, Burrell left the home. Danny went to a neighbor's home and the police were called.

At his trial, Burrell admitted to going to the Fenwick residence with a gun in his hand, forcing his way into their home, striking Dolly twice in the head with the gun, threatening to shoot her, and holding her hair in one hand while pointing the gun at her head. He testified that the gun discharged accidentally and that he had no intention of killing Dolly. When the gun went off, Dolly was crouched on the floor of Davis' room and Burrell, holding her hair, was standing behind her. The bullet was lodged in Dolly's neck. The wound was a close contact wound indicative of a gun being held tightly against her scalp.

As mentioned, Burrell was found guilty of first-degree murder, manslaughter, first-degree robbery, second-degree burglary, second-degree conspiracy, and four

4

counts of PFDCF. He was sentenced to life imprisonment without the possibility of probation or parole for the first-degree-murder charge, followed by an additional 50 years' imprisonment for the remaining charges. All sentences were to run consecutively. This Court affirmed his conviction on direct appeal.[3]

In 2012, the United States Supreme Court, in *Miller*,[4] held that mandatory life imprisonment without the possibility of parole for those under the age of 18 at the time of their crimes violates the Eight Amendment's prohibition on cruel and unusual punishments. In June 2018, the Superior Court resentenced Burrell in compliance with *Miller*. In accordance with 11 *Del. C.* § 4209A, which was enacted in 2013 in response to *Miller*, the court sentenced Burrell to 25 years of Level V incarceration

---

[3] *Burrell v. State*, 766 A.2d 19 (Del. 2000). In 2004, Burrell filed a motion for postconviction relief under Superior Court Rule 61. Burrell asserted two grounds for relief: (i) that the State made improper remarks during the opening and closing statements that were prejudicial to him; and (ii) that the trial court's jury instructions allowed the jury to reach impermissible inferences. Finding that Burrell's claims were previously raised and rejected by the court, the Superior Court concluded that he was not entitled to postconviction relief and denied his motion. *State v. Burrell*, 2004 WL 2829038 (Del. Super. Apr. 26, 2004). He appealed to this Court, and we affirmed the denial of postconviction relief. *Burrell v. State*, 2004 WL 2050317, 871 A.2d 1127 (Del. 2004) (Table). Two years later, Burrell filed a second motion for postconviction relief alleging that his conviction for felony murder in the first degree should be vacated because the murder was not committed "in furtherance of" the commission of the underlying felony of robbery. Burrell based his claims on this Court's decisions in *Williams v. State*, 818 A.2d 906 (Del. 2002), which had not been decided at the time of Burrell's trial, and *Chao v. State,* 931 A.2d 1000 (Del. 2007). In applying the *Williams* decision retroactively, the Superior Court found that there was sufficient evidence to support a finding that the murder of Dolly Fenwick was committed in furtherance of the underlying robbery. *State v. Burrell*, 2007 WL 3277292 (Del. Super. Oct. 31, 2007). This Court affirmed the denial of Burrell's second motion for postconviction relief on appeal. *Burrell v. State*, 953 A.2d 957 (Del. 2008).
[4] 567 U.S. 460 (2012).

for the first-degree murder conviction. The court also imposed the statutory minimum mandatory periods of incarceration for Burrell's first-degree robbery (two years), second-degree burglary (one year), and three possession-of-a-firearm-during-the-commission-of-a-felony (two years for each) convictions, bringing the aggregate sentence to 37 years. This appeal followed.

## II

We review questions of law and constitutional claims *de novo*.[5] Ordinarily, we will not consider questions that have not been fairly presented to the trial court absent plain error.[6] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly shows manifest justice."[7]

## III

In reliance upon *Miller*, the cruel-and-unusual punishments provisions of the United States and Delaware Constitutions, and a handful of opinions from state courts in Iowa and Wisconsin, Burrell essentially asks us to hold that all Delaware statutes that call for minimum mandatory sentences are unconstitutional when

---

[5] *Panuski v. State*, 41 A.3d 416, 419 (Del. 2012).
[6] Supr. Ct. R. 8; *Fisher v. State*, 2003 WL 1443050, 829 A.2d 141 (Del. 2003) (Table).
[7] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986), *cert. denied* 479 U.S. 869 (1986).

applied to juveniles.[8] This represents a significant departure from Burrell's argument before the sentencing court, where he acknowledged that the court was required to impose a 25-year minimum sentence for the first-degree-murder conviction.[9]

## A

Burrell contends that, under *Miller*, a judge should have full discretion to impose a sentence on juveniles without regard to minimum mandatory requirements. Burrell reads *Miller* for the sweeping proposition that, when sentencing juveniles— even for the most serious offenses—judges "should have absolute discretion"[10] and must disregard any minimum mandatory sentences as a matter of constitutional law.

Burrell's reliance on *Miller* is misplaced. *Miller* did not denounce all minimum mandatory sentencing requirements for juveniles. *Miller* instead— without adopting a categorical bar on life without parole for juveniles—declared that

---

[8] *See* Op. Br. 12 ("It is the defendant's position that under *Miller* that in sentencing a juvenile, due to the unique nature of who is being sentenced, . . . the sentencing Judge should have full discretion without regard to minimum mandatory sentences as to the appropriate sentence."); *see also id.* at 19 ("[T]he defendant respectfully prays that this Court should hold that a sentencing scheme which requires minimum mandatory sentences for juvenile defendants should be held unconstitutional.").
[9] *See id.* at 12 ("The defendant argued at the Superior Court that the 25 year sentence under 11 *Del. C.* Sec. 4209(A) was required but that the remaining minimum mandatory time was not. Upon further research it is the defendant's position that under both the Delaware and United States Constitutions that no minimum mandatory sentence is required in the sentencing of a juvenile offender."). As noted, absent plain error, we typically do not consider questions that have not been fairly presented to the trial court. But given the nature of Burrell's argument—that the Superior Court imposed a constitutionally prohibited sentence—we will assume for the purposes of this opinion that, were that true, the error would be plain.
[10] *Id.* at 15.

7

the Eighth Amendment's prohibition of cruel and unusual punishment "forbids a sentencing scheme that *mandates* life in prison without the possibility of parole for juvenile offenders."[11]

To be sure, the *Miller* majority, pointing to the Court's earlier opinions in *Roper v. Simmons*[12] and *Graham v. Florida*,[13] recognized that "children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform . . . , 'they are less deserving of the most severe punishments.'"[14] Therefore, a sentencing scheme that metes out one of the law's harshest punishments—life without probation or parole—to a juvenile without regard for their youth "poses too great a risk of disproportionate punishment"[15] and violates the Eighth Amendment. But Burrell ignores the fact that the General Assembly responded to the concerns expressed in *Miller* by enacting 11 *Del. C.* § 4209A, a statute that explicitly treats juveniles more leniently than their adult counterparts.

In contrast to the mandatory life sentences applicable to adults convicted of first-degree murder, § 4209A sets a sentencing range for juveniles who are convicted of first-degree murder of 25 years' imprisonment up to life imprisonment without

---

[11] *Miller*, 567 U.S. at 479 (emphasis added).
[12] 543 U.S. 551 (2005).
[13] 560 U.S. 48 (2010).
[14] 567 U.S. at 471 (quoting *Roper*, 560 U.S. at 69).
[15] *Id*. at 479.

benefit of probation or parole or any other reduction. What is more, in the wake of

*Miller*, the General Assembly also amended 11 *Del. C.* § 4204A to provide that

> any offender sentenced to a term of incarceration for Murder First Degree when said offense was committed prior to the offender's eighteenth birthday shall be eligible to petition the Superior Court for sentence modification after the offender has served 30 years of the originally imposed Level V [imprisonment] sentence.[16]

Notably, the State has conceded that, although Burrell received a 25-year

sentence for his first-degree-murder conviction, he is nevertheless eligible to apply

for a sentence modification after he has served 30 years of his total 37-year

sentence.[17]

Apparently recognizing that *Miller*'s holding does not support his position,

Burrell also argues that, if we only read *Miller* together with our holding in *Sanders*

*v. State,*[18] we would see that juvenile minimum mandatory sentences are

constitutionally forbidden.[19] But *Sanders* says nothing of the sort. It (or at least the

---

[16] 11 *Del. C.* § 4204(A)(d)(2).

[17] In defending the Superior Court's 37-year sentence in this case, the State noted in its answering brief that, at sentencing, "[t]he prosecutor pointed out that 'the defendant does have the opportunity under 4204A to apply for a modification after he serves a 30-year term to have it reduced, but I think that the Court would have to impose sentence today with all the minimums . . . .' This interpretation of the relationship between 11 *Del. C.* § 4209A and 11 *Del. C.* § 4204A(d)(2) is consistent with an earlier Superior Court ruling in *State v. Evans*, 2013 WL 7046372, at *2 (Del. Super. Nov. 25, 2013)." State's Ans. Br. 8.

[18] 585 A.2d 117 (Del. 1994).

[19] Op. Br. 15 ("[L]ooking at the two part test set forth in *Sanders*, . . . it is respectfully suggested that taking that together with the *Miller* decision[,] . . . in the sentencing of a juvenile defendant Trial Judges should have absolute discretion.").

portion cited by Burrell) stands for the unremarkable proposition that the Delaware Constitution, no less than the Eighth Amendment to the United States Constitution, "demands that a death sentence be proportionate to a defendant's culpability and that it accomplish some legitimate penological end."[20] Put simply, Burrell's claim that *Miller*, when read together with *Sanders*, invalidates 11 *Del. C.* § 4209A and other minimum mandatory sentencing statutes when applied to juveniles, is without merit.

B

Although Burrell's constitutional arguments bleed into each other, he seems to argue, independently from his *Miller* argument, that his 37-year sentence violates the prohibition in Article I, Section 11 of the Delaware Constitution against the imposition of "cruel punishments."

But Burrell has not properly presented a state constitutional claim. For starters, he did not raise this claim in the Superior Court. Moreover, we have repeatedly warned that "conclusory assertions that the Delaware Constitution has been violated will be considered to be waived on appeal."[21] Justice Holland summarized the manner in which a state constitutional claim should be presented in terms that are directly applicable to this case:

---

[20] *Sanders*, 585 A.2d. at 147 (concluding that the imposition of the death penalty following a guilty but mentally ill verdict is not disproportionate under the Delaware constitution).
[21] *Wallace v. State*, 956 A.2d 630, 637 (Del. 2008) (quoting *Ortiz v. State*, 869 A.2d 285, 291 n.4 (Del. 2005)); *see also Wallace*, 956 A.2d at 637 n. 15.

10

> A proper presentation of an alleged violation of the Delaware Constitution should include a discussion and analysis of one or more of the following non-exclusive criteria: textual language, legislative history, preexisting state law, structural differences, matters of particular state interest or local concern, state traditions, and public attitudes. Simply reciting that his sentence . . . violates Article I, section 11, without more, is a conclusory statement.[22]

Burrell's assertions before this Court that his sentence and the statutes under which he was sentenced violate the Delaware Constitution satisfy none of the above criteria and are conclusory statements.

Because Burrell did not properly present his state constitutional claim to the Superior Court or to us on appeal, he has waived his argument that his sentence violated Article I, Section 11 of the Delaware Constitution.

C

Burrell cites opinions from the Supreme Courts of Iowa and Wyoming in support of his request that we strike down juvenile minimum mandatory sentences. In *State v. Null*,[23] the Iowa Supreme Court held that a 52½-year minimum prison term for a juvenile based on the aggregation of minimum mandatory sentences for second-degree murder and first-degree robbery triggers *Miller* protections— "namely, an individualized sentencing hearing to determine the issue of parole eligibility."[24] Central to the Court's decision was its view that the 52½-year sentence

---

[22] *Id.* at 637 (quotations and footnotes omitted).
[23] 836 N.W.2d 41 (Iowa 2013).
[24] *Id.* at 71.

11

was the functional equivalent of a life-without parole sentence. But Burrell cannot and does not say the same about his 37-year sentence, especially in light of his ability to seek a sentence modification under § 4204A after serving 30 years.[25]

After *Null*, the Iowa Supreme Court went even further and, in *State v. Lyle*,[26] concluded that *all* minimum mandatory sentences of imprisonment for juvenile offenders are unconstitutional under the cruel and unusual clause in the Iowa Constitution. Although the majority opinion in *Lyle*—three of the court's seven justices dissented—observed that "*Miller* is properly read to support a new sentencing framework that reconsiders mandatory sentencing for all children,"[27] it stops short of tethering its conclusion to *Miller* and the Eighth Amendment.

Likewise, the facts in *Bear Cloud v. State*[28] are also distinguishable from this case. Like in *Null*, the Wyoming Supreme Court viewed a 45-year sentence without the possibility of parole to be "the functional equivalent of life without parole."[29] Again, Burrell makes no such claim of functional equivalency here.

Moreover, there is ample—and, we think—more persuasive authority from other states that rejects the approach taken by the Iowa and Wyoming courts.[30] For

---

[25] *See* State's Ans. Br. 8.
[26] 854 N.W. 2d 378 (Iowa 2014).
[27] *Id*. at 402.
[28] 334 P.3d 132 (Wy. 2014).
[29] *Id*. at 142.
[30] Op. Br. 16 (citing cases from Pennsylvania, the District of Columbia, Illinois, Wisconsin, and Minnesota).

instance, the Supreme Court of Minnesota made short work of a juvenile offender's argument that his mandatory life sentence with the possibility of release after 30 years violated the United States Constitution under the reasoning of *Miller*:

> *Miller* did not hold that a juvenile homicide offender could not be sentenced to life imprisonment *with* the possibility of release. Instead, *Miller* held more narrowly that "a judge or jury must have the opportunity to consider mitigating circumstances" before imposing a sentence of life in prison *without* the possibility of release on a juvenile. Appellant's life sentence with the possibility of release after 30 years is not tantamount to a death sentence. Because appellant is eligible for release after 30 years, his mandatory life sentence for first-degree murder does not constitute cruel and unusual punishment under the Eighth Amendment and the principles of *Miller*.[31]

In a similar manner, the District of Columbia Court of Appeals upheld a 30-year minimum mandatory sentence imposed on a juvenile who was convicted of premeditated first-degree murder while armed.[32] The court concluded that because the D.C. Code sentencing statute (like 11 *Del. C.* § 4209A) already took into account the juvenile offender's youth, the appellant's sentence did not violate the Cruel and Unusual Punishments Clause of the Eighth Amendment. And appellate courts have

---

[31] *State v. Vang*, 847 N.W. 2d 248, 262-63 (Minn. 2014) (citations omitted).
[32] *James v. United States*, 59 A.3d 1233, 1238 (D.C. App. 2013).

reached similar conclusions in Wisconsin,[33] Illinois,[34] Connecticut,[35] Florida,[36] and our nearby sister state, Pennsylvania.[37]

In sum, we are satisfied that the General Assembly's response to *Miller*, as evidenced by the current version of 11 *Del. C.* § 4209A, which does not mandate a life sentence and takes into account the youth of juvenile offenders who are convicted of first-degree murder, as qualified by § 4204A's sentence modification provision, adequately addressed the constitutional concerns identified in *Miller*.

---

[33] *State v. Barbeau*, 883 N.W. 2d 736 (Wisc. 2016) (rejecting claims, based on *Miller* and *Lyle*, that statutory scheme with a range of penalties for intentional homicide from a minimum mandatory sentence of 20 years to life imprisonment violated United States and Wisconsin Constitutions' prohibitions against cruel and unusual punishment).

[34] *People v. Banks*, 36 N.E. 3d 432 (Ill. App. 2015) (upholding defendant's minimum mandatory sentence of 45 years for first-degree murder with a mandatory firearm enhancement against cruel-and-unusual punishment claim under *Roper, Graham,* and *Miller*). *But cf. People v. Reyes*, 63 N.E. 3d 884, 888 (Ill. 2016) (holding "that sentencing a juvenile offender to a mandatory term of years that is the functional equivalent of life without the possibility of parole constitutes cruel and unusual punishment in violation of the eighth amendment," and finding, particularly, that a legislatively mandated sentence of 97 years with the earliest opportunity for release after 89 years, when the defendant would be 105 years old, was the functional equivalent of life without parole).

[35] *State v. Taylor G.*, 110 A.3d 338 (Conn. 2015) (rejecting defendant's claim that the ten- and five-year minimum mandatory sentences for first-degree sexual assault and risk of injury to a child, respectively, violate the Eighth Amendment right to an individualized, proportionate sentence); *see also State v. Rivera*, 172 A.3d 260, 267 (Conn. App. 2017) ("[U]nder *Miller*, a sentencing court's obligation to consider youth related mitigating factors is limited to cases in which the court imposes a sentence of life, or its equivalent, *without* parole.") (quoting *State v. Delgado*, 151 A.3d 345 (Conn. 2016)).

[36] *State v. Michel*, 257 So.3d 3 (Fla. 2018) (affirming sentence of life imprisonment with possibility of parole after 25 years against challenge under *Graham* and *Miller*).

[37] *Com. v. Lawrence*, 99 A.3d 116 (Pa. Super. 2014) (holding that a statute imposing a minimum mandatory sentence of 35 years on a juvenile defendant convicted of murder did not violate Eighth Amendment as interpreted in *Miller*).

IV

Finally, Burrell asserts that the Superior Court's interpretation of the resentencing requirements was overbroad in violation of the Delaware and United States Constitution.[38] We think Burrell misapplies the legal term "overbreadth,"[39] but we understand his challenge to mean this: (1) a hypothetical term-of-years sentence could constitute an effective life sentence in a case where a defendant was subject to multiple minimum mandatory sentences (*e.g.*, numerous 25-year minimum mandatory terms following a mass shooting) that must be served consecutively, (2) because an effective life sentence is constitutionally infirm, the minimum mandatory and mandatory consecutive service provisions that would have led to such a sentence are unconstitutional, and (3) because Burrell's sentence involves minimum mandatory sentences and mandatory consecutive service,[40] his sentence is accordingly unconstitutional.

---

[38] Op. Br. 16–17 ("If the defendant's suggested approach is not accepted by this Court the defendant respectfully submits that the way that the Trial Court interpreted its requirements at resentencing was overbroad in violation of the Delaware and United States Constitution. If a statute reaches a substantial amount of constitutionally protected conduct it is overbroad. *State v. Baker*, 720 A.2d 1139 (Del. 1998).").

[39] Where a statute is challenged on the basis of overbreadth, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *State v. Baker*, 720 A.2d 1139, 1144 (Del. 1998). "A statute is facially overbroad when it 'does not aim specifically at evils within the allowable area of government control, but . . . sweeps within its ambit other activities that constitute an exercise of protected expressive or associational rights." *Id*. at 1145 (citations omitted). No protected expressive or associational rights are implicated by Burrell's sentencing.

[40] *See* 39 *Del. C.* § 3901 (mandatory consecutive service for certain violent crimes).

We reject Burrell's argument for three reasons.

First, Burrell cites no authority—nor are we aware of any—that a sentencing scheme that mandates sentences for criminal offenses to run consecutively with other sentences[41] is constitutionally overbroad, at least in the sense that Burrell means.

Second, the logical end of Burrell's argument is that *any* minimum mandatory sentence for juveniles is constitutionally infirm, at least where the sentences must run consecutively. Following Burrell's logic, any statute requiring even a relatively short minimum mandatory sentence would be constitutionally invalid since such a minimum—compounded across sufficient charges—could add up to an effective life sentence, at least in theory. But *Miller* does not point to such a result. As mentioned, *Miller* does not mean that a court may *never* sentence a juvenile to life imprisonment or even life without parole.[42] Rather, *Miller* simply stands for the proposition that, in the case of a single offense, a mandatory life-without-parole sentence "poses too great a risk of disproportionate punishment."[43] Now, it may be that the "evolving

---

[41] Relevant to Burrell's sentence, 11 *Del. C.* §3901, while it does not prohibit all concurrent sentencing, mandates that "no sentence of confinement of any criminal defendant by any court of this State shall be made to run concurrently with any other sentence of confinement for any conviction . . . Manslaughter . . . [,] Murder in the first degree . . . [,] Burglary in the second degree . . . [, and] Possession of a firearm during the commission of a felony."

[42] *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016); *see also Kinkel v. Persson*, 417 P.3d 401, 417 (Or. 2018), *cert. denied sub nom*. *Kinkel v. Laney*, 2019 WL 113226 (U.S. Jan. 7, 2019); *State v. Ali*, 855 N.W.2d 235, 258 (Minn. 2014).

[43] *Miller*, 567 U.S. at 479; *id*. at 483 ("youth matters for purposes of meting out the law's *most serious* punishment") (emphasis added).

standards of decency that mark the progress of a maturing society"[44] will compel the United States Supreme Court to rule someday that the Eighth Amendment prohibits *any* minimum mandatory sentences for juvenile offenders, but *Miller* did not mark that day.

Finally, even if mandatory terms-of-years imprisonments summing to an effective life sentence without parole were constitutionally impermissible, the remedy is not necessarily that the sentences must be shorter, but may be that the defendant must have an opportunity for parole or similar sentence abridgment within a constitutionally permissible time frame.  Of course, as mentioned, the State has conceded that Burrell has just such an opportunity here for sentence modification after 30 years, a term that no court has ever held to be a *de facto* life sentence for a juvenile.  Accordingly, Burrell is entitled to no additional relief under the Eighth Amendment.

V

Because we are satisfied that the sentencing scheme for offenders who are convicted of first-degree murder when the offense was committed before the offender's eighteenth birthday passes constitutional muster under *Miller,* which did not invalidate minimum mandatory sentences for lesser offenses, and is not

---

[44] *Miller*, 567 U.S. at 469–70 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).

overbroad in the constitutional sense, we AFFIRM the Superior Court's sentencing order.