TOOKEY, J., dissenting.
Today, the majority holds that the imposition of a sentence of life imprisonment with the possibility of parole after 30 years, under ORS 163.105 and ORS 163.150, to juvenile offenders, violates the Eighth Amendment to the United States Constitution based on the principles articulated by the United States Supreme Court in Roper v. Simmons , 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), Graham v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). State v. Link , 297 Or. App. 126, 128, 441 P.3d 664 (2019).[1] I would hold that the Eighth Amendment, as *159 interpreted by those decisions, does not render the imposition of a sentence of life imprisonment with the possibility of parole after 30 years on a juvenile offender under *683 ORS 163.105 and ORS 163.150 unconstitutional.
The Roper , Graham , and Miller decisions were resolved under circumstances not present in this case, namely, the juvenile offender being subjected to a sentence of death or a sentence of life without the possibility of parole-sentences that "share some characteristics * * * that are shared by no other sentences" because they "alter[ ] the offender's life by a forfeiture that is irrevocable." Graham , 560 U.S. at 69, 130 S.Ct. 2011. I conclude that Oregon's aggravated murder sentencing scheme does not run afoul of the Eighth Amendment, as interpreted by those decisions, because ORS 163.150 allows the sentencer to impose the lesser sentence of life with the possibility of parole after 30 years, and requires the sentencer to consider any relevant mitigating evidence about the offender's youth and its attendant characteristics before imposing a sentence of life without the possibility of parole. See Miller , 567 U.S. at 477-78, 132 S.Ct. 2455 (the "sentencer should look at such facts before depriving a [juvenile offender] * * * of any prospect of release from prison"). Therefore, I respectfully dissent.
I. SUPREME COURT PRECEDENT
In recent years, the United States Supreme Court has decided a line of cases that acknowledge that juveniles are categorically less deserving of a narrow class of the harshest punishments available for crimes that they commit because of the fundamental differences between juveniles and adults. However, none of those cases involved a challenge to a discretionary sentence of life imprisonment with the possibility of parole after 30 years. Thus, a history of the developing case law in this area is necessary to understand the threshold question presented in this case-viz. , whether the principles and reasoning articulated in Roper , Graham , and Miller extend to the imposition of a discretionary sentence of life imprisonment with the possibility of parole after 30 years, and require the conclusion reached by the majority that ORS 163.105 and ORS 163.150, as applied to juveniles, are unconstitutional.
*160 A. Roper v. Simmons
In Roper , the defendant was convicted of, and sentenced to death for, a murder that he committed when he was 17 years old. 543 U.S. at 556-58, 125 S.Ct. 1183. The Court acknowledged that, "[b]ecause the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force " and, after noting three general differences between juveniles and adults that diminish the culpability of juvenile offenders, the Court held that it is unconstitutional to impose death sentences on juvenile offenders. Id . at 568-71, 125 S.Ct. 1183 (emphasis added).[2] Thus, after Roper , a life without parole sentence became the most severe punishment that a court could impose on a juvenile offender.
B. Graham v. Florida
In Graham , the defendant was sentenced to life without the possibility of parole for an armed burglary that the defendant committed when he was 16 years old. 560 U.S. at 53-57, 130 S.Ct. 2011. The Court began by "recogniz[ing] the severity of sentences that deny convicts the possibility of parole " and observing that "life without parole sentences share some characteristics with death sentences that are shared by no other sentences ." Id . at 69-70, 130 S.Ct. 2011 (emphasis added). The Court explained that both of those sentences "alter[ ] the offender's life by a forfeiture that is irrevocable" and "deprive[ ] the convict of the most basic liberties without giving hope of restoration" because "it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." Graham , 560 U.S. at 69-70, 130 S.Ct. 2011 (third brackets in Graham , internal quotation marks and citation omitted); see also *684 Solem v. Helm , 463 U.S. 277, 303 n. 32, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (noting the distinction between a sentence of life without parole and a sentence of life with the possibility of parole); Rummel v. Estelle , 445 U.S. 263, 280-81, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (a proper assessment under the Eighth Amendment "could hardly ignore the possibility that [a defendant] will not actually be imprisoned for the rest of his life" because "the possibility of parole, however slim, serves to distinguish * * * a person sentenced [to] * * * life without parole"). The Court also noted that "[l]ife without parole is an especially harsh punishment for a juvenile" because "a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender." Graham , 560 U.S. at 70, 130 S.Ct. 2011 ; see also Harmelin v. Michigan , 501 U.S. 957, 996, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ("In some cases, * * * there will be a negligible difference between life without parole and other sentences of imprisonment-for example, a life sentence with eligibility for parole after 20 years * * * given to a 65-year-old man.").
The Court then turned to the "penological justifications" for imposing a life without parole sentence on juvenile nonhomicide offenders. Graham , 560 U.S. at 71, 130 S.Ct. 2011. The Court stated that the goals of retribution and deterrence do not "justify imposing the second most severe penalty" because of a juvenile nonhomicide offender's diminished culpability and moral responsibility. Id . at 71-72, 130 S.Ct. 2011. Additionally, the Court determined that incapacitation could not support the imposition of a sentence that requires the sentencer to make a judgment at the outset that a juvenile offender is incorrigible, because "it is difficult * * * to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Id . at 73, 130 S.Ct. 2011 (internal quotation marks and citation omitted). The Court observed that "incorrigibility is inconsistent with youth" and, by making that judgment at the outset, a "life without parole sentence improperly denies the juvenile offender a chance to demonstrate growth and maturity." Id . at 72-73, 130 S.Ct. 2011 (internal quotation marks omitted). For similar reasons, the Court determined that "the penalty forswears altogether the rehabilitative ideal" by making "an irrevocable judgment [at the outset] about that person's value and place in society" that is at odds with a child's "capacity for change." Id . at 74, 130 S.Ct. 2011. Hence, the Court concluded that, "none of the goals of penal sanctions that have been recognized as legitimate-retribution, *162 deterrence, incapacitation, and rehabilitation-provide[ ] an adequate justification" to impose a sentence of life without parole on a juvenile nonhomicide offender. Id . at 71, 130 S.Ct. 2011.
After considering the "especially harsh" nature of a sentence of life without parole for juvenile offenders, the lack of penological justifications for the sentencing practice, and the characteristics of youth outlined in Roper , the Court considered several potential procedural solutions. Graham , 560 U.S. at 68-80, 130 S.Ct. 2011. The Court concluded that a "categorical rule" was needed to "give[ ] all juvenile nonhomicide offenders a chance to demonstrate maturity and reform," and held that the Eighth Amendment forbids a sentence of life without parole for a juvenile offender that did not commit homicide. Id . at 68-82, 130 S.Ct. 2011. The Court explained:
"The juvenile should not be deprived of the opportunity to achieve maturity of judgment and self-recognition of human worth and potential. In Roper, that deprivation resulted from an execution that brought life to its end. Here, though by a different dynamic, the same concerns apply . Life in prison without the possibility of parole gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope. Maturity can lead to that considered reflection which is the foundation for remorse, renewal, and rehabilitation. A young person who knows that he or she has no chance to leave prison before life's end has little incentive to become a responsible individual."
Id . at 79 (emphasis added). Additionally, the Court cautioned that its holding, prohibiting a sentence of life without parole for juvenile *685 offenders who do not commit homicide, does not mean that a State is "required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime." Id . at 75, 130 S.Ct. 2011. The Court explained:
"What the State must do * * * is give defendants * * * some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance . It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes *163 as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society."
Id . (emphases added). Hence, the Court concluded that the Eighth Amendment does not prohibit the States from "impos[ing] a sentence of life" on a juvenile nonhomicide offender, as long as the State provides some meaningful opportunity for release during the offender's lifetime based on the offender's demonstrated maturity and rehabilitation, i.e. , the possibility of parole. Id . at 82, 130 S.Ct. 2011.
C. Miller v. Alabama
In Miller , the Court considered an Eighth Amendment challenge in a consolidated appeal involving two 14-year-old offenders who received mandatory sentences of life imprisonment without the possibility of parole based on their single murder convictions. 567 U.S. at 465-69, 132 S.Ct. 2455. In both of the defendant's cases, there was only one possible punishment for the murders-a statutorily mandated sentence of life without the possibility of parole-because "[s]tate law mandated that each juvenile die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate." Id . at 465, 132 S.Ct. 2455 (emphasis in original). Based on the mandatory and lifetime nature of those sentences, the Court determined that the sentences implicated "two strands of precedent reflecting [its] concern with proportionate punishment." Id . at 470, 132 S.Ct. 2455 ; see State v. Conrad , 280 Or. App. 325, 338, 381 P.3d 880 (2016), rev. den. , 360 Or. 851, 389 P.3d 1141 (2017) (the "Court's holding in Miller was * * * hinged on both the mandatory nature of the sentence and the lifetime nature of the sentence" (emphasis in original)).
The Court began with the first strand of precedent by reaffirming the foundational principle articulated in Roper and Graham , viz ., "that children are constitutionally different from adults for purposes of sentencing * * *
*164 [b]ecause juveniles have diminished culpability and greater prospects for reform." Id . at 470-71, 132 S.Ct. 2455 (citing Atkins v. Virginia , 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) and discussing the Court's adoption of "categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty," such as the execution of intellectually disabled defendants). The Court concluded that the mandatory nature of the sentencing schemes contravene Roper 's and Graham 's foundational principle because the "laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." Id . at 474, 132 S.Ct. 2455 (emphasis added).[3]
With regard to the second strand of precedent that deals with the lifetime nature of the punishment, the court stated that Graham 's treatment of juvenile life without parole sentences as analogous to capital punishment "makes relevant" the second line of precedents which require individualized sentencing *686 where the judge or jury can assess any mitigating factors-including the mitigating qualities of youth-to ensure that the most severe penalty "is reserved only for the most culpable defendants committing the most serious offenses." Id . at 475-76, 132 S.Ct. 2455 (citing Woodson v. North Carolina , 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (holding that a statute that mandates a death sentence violates the Eighth Amendment)). In light of Graham 's reasoning in that regard, the court concluded that the flaw with a mandatory life sentence without parole was that it "preclude[s] a sentencer from taking into account * * * an offender's age and the wealth of characteristics and circumstances attendant to it," and "disregards the possibility of rehabilitation even when the circumstances most suggest it." Id . at 476-78, 132 S.Ct. 2455.
Based on those two lines of precedent, the court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Id . at 479, 132 S.Ct. 2455 (citing Graham , 560 U.S. at 75, 130 S.Ct. 2011 *165 ("[a] state is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation")). Furthermore, the court declined to impose a categorical ban on sentencing juvenile homicide offenders to life without parole, but noted that "sentencing juveniles to this harshest possible penalty will be uncommon," because the sentencer must be able to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id . at 479-80, 132 S.Ct. 2455. The Court clarified that a sentence of life without parole should only be imposed on "the rare juvenile offender whose crime reflects irreparable corruption." Id . (internal quotation marks omitted). Accordingly, the Court concluded that the mandatory sentencing schemes at issue violated the Eighth Amendment's ban on cruel and unusual punishment because they precluded the sentencer from "consider[ing] mitigating circumstances before imposing the harshest possible penalty for juveniles." Id . at 489, 132 S.Ct. 2455.
D. Montgomery v. Louisiana
Most recently, in Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 725, 193 L.Ed.2d 599 (2016), the Court decided whether the holding of Miller "is retroactive to juvenile offenders whose convictions and sentences were final when Miller was decided." The defendant was convicted for a murder that he committed in 1963 when the defendant was 17 years old. Id . at ----, 136 S.Ct. at 725. "The jury returned a verdict of guilty without capital punishment" which, under Louisiana law, "required the trial court to impose a sentence of life without parole." Id . at ----, 136 S.Ct. at 725-26 (internal quotation marks omitted). Thus, as was the case in Miller , the state sentencing law at issue in Montgomery prevented the defendant from "present[ing] mitigation evidence to justify a less severe sentence." Id . at ----, 136 S.Ct. at 726.
The Court began by summarizing its holding in Miller :
" Miller held that mandatory life without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on cruel and unusual punishments. By making youth *166 (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, mandatory life without parole poses too great a risk of disproportionate punishment. Miller required that sentencing courts consider a child's diminished culpability and heightened capacity for change before condemning him or her to die in prison . Although Miller did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect irreparable corruption."
Id . at ----, 136 S.Ct. at 726 (emphases added; internal quotation marks and citations omitted).
The Court then discussed the procedural and substantive components of Miller 's holding. As a substantive matter, the Court concluded that Miller "rendered life without parole an unconstitutional penalty for 'a class of *687 defendants because of their status'-that is, juvenile offenders whose crimes reflect the transient immaturity of youth." Id . at ----, 136 S.Ct. at 734 (quoting Penry v. Lynaugh , 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ). As a procedural matter, the Court explained that the procedure that " Miller proscribes is * * * [a] hearing where 'youth and its attendant characteristics' are considered * * * to separate those juveniles who may be sentenced to life without parole from those who may not." Id . at ----, 136 S.Ct. at 735. However, when considering the degree of procedure that Miller mandated, the "Court [wa]s careful to limit the scope of any attendant procedural requirement to avoid intruding on more than necessary upon the States' sovereign administration of their criminal justice systems," and noted that " Miller did not impose a formal factfinding requirement." Id . at ----, 136 S.Ct. at 735.
The Court ultimately held "that Miller announced a substantive rule of constitutional law" that, under the constitution, must be applied retroactively. Id . at ----, 136 S.Ct. at 736. Furthermore, the Court explained:
"Giving Miller retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory *167 life without parole. A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, e.g ., Wyo Stat Ann. § 6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity-and who have since matured-will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.
"Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of Miller 's central intuition-that children who commit even heinous crimes are capable of change."
Id . at ----, 136 S.Ct. at 736. Hence, the Court concluded that the imposition of a life sentence with the possibility of parole cures a Miller violation because it ensures that prisoners will "be given the opportunity to show their crime did not reflect irreparable corruption" and restores "their hope for some years of life outside of prison walls." Id . at ----, 136 S.Ct. at 736-37.[4] Miller and Montgomery thus established the threshold which must be met before this type of categorical Eighth Amendment challenge to a sentencing scheme can be successfully raised, that is, that the juvenile offender must be sentenced to life without parole under a mandatory sentencing scheme that precludes the defendant from "present[ing] mitigation evidence to justify a less severe sentence." Id . at ----, 136 S.Ct. at 726.
*168 II. APPLICATION OF MILLER 'S HOLDING
The Supreme Court has not extended the holding in Miller beyond the context of imposing a mandatory sentence of life without parole for juvenile offenders. See Kinkel v. Persson , 363 Or. 1, 17, 417 P.3d 401 (2018), cert. den. , --- U.S. ----, 139 S. Ct. 789, 202 L.Ed.2d 585 (2019) (the Supreme Court "has not extended its holdings in Roper , Miller , and Graham to lesser minimum sentences");
*688 State v. Ward , 295 Or.App. 636, 659-60, 437 P.3d 298 (2019) (rejecting the defendant's argument that Miller requires a categorical constitutional bar on life without parole sentences for a person with intellectual disabilities and noting that "the constitutional problem that the Court resolved in Miller is that mandatory life sentences for juvenile homicide offenders prevent the sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender" (internal quotation marks omitted)). Here, defendant was not sentenced under a sentencing scheme that mandated a life sentence without parole; defendant was sentenced to life with the possibility of parole after 30 years.
Furthermore, the Supreme Court has not held that the Eighth Amendment renders a sentence of life with the possibility of parole after 30 years an unconstitutional penalty for an entire class of defendants because of their status-that is, juvenile offenders whose crimes reflect the transient immaturity of youth. To the contrary, in Graham , the Court stated that "[t]he Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life," as long as the state provides "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," i.e. , the possibility of parole. 560 U.S. at 75, 130 S.Ct. 2011 ; see Virginia v. LeBlanc , --- U.S. ----, 137 S.Ct. 1726, 1728-29, 198 L.Ed.2d 186 (2017) (in the context of federal habeas relief, holding that "it was not objectively unreasonable for the state court to conclude that, because the geriatric release program employed normal parole factors, it satisfied Graham 's requirement that juveniles convicted of a nonhomicide crime have a *169 meaningful opportunity to receive parole"). If a life sentence with the possibility of parole is a constitutionally permissible sentence for a class of juvenile offenders who do not commit murder and are "categorically less deserving of the most serious forms of punishment than * * * murderer[s]," it seems difficult to conclude, as the majority does, that such a sentence would be an unconstitutional penalty for juvenile offenders that commit aggravated murder. Graham , 560 U.S. at 69, 130 S.Ct. 2011. Although a sentence of life with the possibility of parole after 30 years is Oregon's third most severe sentence, the rationale underlying the holding of Miller does not lead to the conclusion that such a sentence is unconstitutional, because such a sentence does not share the unique characteristic of altering the remainder of an offender's life "by a forfeiture that is irrevocable," and, therefore, is not "akin to the death penalty." 567 U.S. at 474-75, 132 S.Ct. 2455 (internal quotation marks omitted). Indeed, a life sentence with the possibility of parole after 30 years provides a juvenile offender with an opportunity to obtain release within his or her expected lifetime based on demonstrated maturity and rehabilitation.
The key issue that I take with the majority's approach is that the majority does not articulate a workable standard to determine which sentences are the "most severe" and does not delineate any limit as to which sentences qualify as the "most severe." See 297 Or.App. at 148, 441 P.3d at 677 ("We need not decide the full contours of what constitutes the harshest or most severe criminal penalties in Oregon. It is sufficient * * * to say that the three sentences * * * for aggravated murder * * * are, unsurprisingly, the 'most severe' punishments available in the state and, as such, are in the category of penalties to which the principles set forth in Roper , Graham , and Miller apply.").
In my view, to determine whether the principles set forth in Roper , Graham , and Miller categorically ban the imposition of a particular sentence, the nature of the sentencing practice at issue, and the penological justifications for the sentence being imposed, must be evaluated to determine if the sentence is analogous to those that have been deemed the "most severe" by the Supreme Court.
*170 A. Miller's holding was hinged on the specific nature of a life sentence without the possibility of parole.
1. Life without parole sentences share some characteristics with death sentences that are shared by no other sentences.
With respect to the lifetime nature of the sentence, the majority concludes that *689 Miller 's holding applies to imposition of a sentence of life with the possibility of parole after 30 years under ORS 163.105 because it is Oregon's "third most severe" penalty and it applies "only for commission of aggravated murder, the most serious offense in the state." 297 Or.App. at 147, 441 P.3d at 676 (internal quotation marks and citation omitted). However, that conclusion disregards a central premise on which the mandatory sentencing schemes in Miller were declared unconstitutional, i.e. , that "life without parole sentences share some characteristics with death sentences that are shared by no other sentences," Graham , 560 U.S. at 69, 130 S.Ct. 2011, because "[i]mprisoning an offender until he dies alters the remainder of his life by a forfeiture that is irrevocable." Miller , 567 U.S. at 474-75, 132 S.Ct. 2455 (internal quotation marks omitted).
By considering the imposition of a sentence of life without parole on a juvenile "as akin to the death penalty" and "treat[ing] it similarly to that most severe punishment," the Court invoked "a distinctive set of legal rules" that require the sentencer to make individualized sentencing determinations before imposing the death penalty. Id . at 475, 132 S.Ct. 2455 (internal quotation marks omitted); see also id . (noting Graham 's likening of life without parole sentences to the death penalty itself and treatment of juvenile life sentences as analogous to capital punishment); Harmelin , 501 U.S. at 995-96, 111 S.Ct. 2680 (discussing the applicability of the "individualized capital sentencing doctrine" to adults, and declining to apply that "requirement outside of the capital context, because of the qualitative difference between death and all other penalties"); Woodson , 428 U.S. at 304-05, 96 S.Ct. 2978 (concluding "that the penalty of death is different from a sentence of imprisonment, however long," because of its finality and, therefore, "requires consideration of the character and record of the individual offender and the circumstances of the offense as a constitutionally indispensable part of the *171 process of inflicting the penalty of death"). In explaining why the statutory schemes at issue in Miller "ran afoul of [the Court's] cases' requirement of individualized sentencing for defendant's facing the most serious penalties," the Court's opinion "is replete with terms such as 'the laws harshest term of imprisonment' and 'lengthiest possible incarceration' " which indicate that " Miller 's reach * * * [is] limited to such a penalty" imposed on juveniles, viz ., life without parole ( Graham ) or death ( Roper ). Conrad , 280 Or. App. at 337-38, 381 P.3d 880 (quoting Miller , 567 U.S. at 465-74, 132 S.Ct. 2455 (emphasis in Conrad )).
2. A sentence of life with the possibility of parole after 30 years is not akin to the death penalty (or life without parole).
Furthermore, as illustrated by the discussion above, the Supreme Court's case law in this area is also replete with the distinctions between sentences that provide the possibility of parole and sentences that are irrevocable. See Montgomery , --- U.S. ----, 136 S.Ct. at 736 ("Allowing * * * offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity-and who have since matured-will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."); Miller , 567 U.S. at 474, 132 S.Ct. 2455 (life-without-parole terms " 'share some characteristics with death sentences that are shared by no other sentences' " (quoting Graham , 560 U.S. at 69, 130 S.Ct. 2011 )); Graham , 560 U.S. at 70, 130 S.Ct. 2011 (the "Court has recognized the severity of sentences that deny convicts the possibility of parole"); Solem , 463 U.S. at 302-03, 303 n. 32, 103 S.Ct. 3001 (explicitly recognizing the distinction between a life sentence with the possibility of parole, and a life sentence without the possibility of parole and only the possibility of executive commutation); Rummel , 445 U.S. at 280-81, 100 S.Ct. 1133 (a proper assessment under the Eighth Amendment "could hardly ignore the possibility that [a defendant] will not actually be imprisoned for the rest of his life" because "the possibility of parole, however slim, serves to distinguish * * * a person sentenced [to] * * * life without parole"); Lockyer v. Andrade , 538 U.S. 63, 70-74, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (sentence of two consecutive terms of 25 years to life is "materially [ ]distinguishable" from a sentence of life *690 without parole because a defendant actually *172 "retains the possibility of parole"); Lockett v. Ohio , 438 U.S. 586, 605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (in "noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes;" individualized sentencing is constitutionally required in capital cases because of the "nonavailability of corrective or modifying mechanisms," whereas a "variety of flexible techniques-probation, parole, work furloughs, to name a few-* * * may be available to modify an initial sentence of confinement in noncapital cases"). I do not perceive a basis in the Court's decisions to extend the individualized capital sentencing doctrine to a sentence with a modifying mechanism that provides juvenile offenders with a meaningful opportunity to obtain release during their lifetime; a sentence of life with the possibility of parole after 30 years is not akin to the irrevocable sentence of capital punishment (or life without parole).
3. Different penological justifications apply to a life sentence with the possibility of parole because it is not akin the death penalty (or life without parole).
As discussed above, in Graham and Miller , the Court noted the lack of penological justifications for imposing life without parole sentences on juvenile offenders. In imposing a life sentence without the possibility of parole, the sentencer is required to make "the judgment at the outset that [a juvenile offender] never will be fit to reenter society." Graham , 560 U.S. at 69-70, 75, 130 S.Ct. 2011 ; see also Miller , 567 U.S. at 472-73, 132 S.Ct. 2455 (noting that the penological justifications of incapacitation and rehabilitation did not support the imposition of a life without parole sentence because it requires the sentencer to make a judgment at the outset that a juvenile "is incorrigible-but incorrigibility is inconsistent with youth" (internal quotation marks omitted)). Thus, in Miller , the Court concluded that the sentencer must be able to consider the offender's youth and its attendant characteristics before imposing a life sentence without parole because the sentencer is the only entity that gets to decide whether a "juvenile offender forever will be a danger to society," such that the offender needs to be incapacitated for life, thereby "forswear[ing] altogether the rehabilitative ideal." Graham , 560 U.S. at 72-74, 130 S.Ct. 2011.
*173 Conversely, the imposition of a sentence of life with the possibility of parole after 30 years gives a juvenile offender "some meaningful opportunity to obtain release [during their lifetime] based on demonstrated maturity and rehabilitation," and does not require the sentencer to make "the judgment at the outset that [a juvenile offender is incorrigible and] never will be fit to reenter society." Id . at 75, 130 S.Ct. 2011. As such, different penological justifications apply when imposing a life sentence with the possibility of parole. See U.S. v. Kebodeaux , 570 U.S. 387, 396-97, 133 S.Ct. 2496, 186 L.Ed.2d 540 (2013) (the principle purpose of parole is "to rehabilitate the convict, thus preventing him from recidivating and to protect the public"); Graham , 560 U.S. at 72-74, 130 S.Ct. 2011 (noting that retribution does not justify imposing a sentence of life without parole on a juvenile nonhomicide offender, that rehabilitation is the "penological goal that forms the basis of parole systems," and that "the absence of rehabilitative opportunities or treatment makes the disproportionality of the sentence all the more evident"); Samson v. California , 547 U.S. 843, 853-55, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (noting that parole systems further the States' interests of "combating recidivism" and "promoting reintegration"); Solem , 463 U.S. at 300, 103 S.Ct. 3001 ("Parole is a regular part of the rehabilitative process."); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex , 442 U.S. 1, 8, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (noting that state parole systems serve "the public-interest purposes of rehabilitation and deterrence"); Morrissey v. Brewer , 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (noting that "parole is an established variation on imprisonment of convicted criminals" and that "[i]ts purpose is to help individuals reintegrate into society as constructive individuals"). Therefore, unlike a sentence of death or life without parole, which forecloses any meaningful opportunity for release based on demonstrated rehabilitation and requires the sentencer to forswear *691 altogether the rehabilitative ideal, I believe that the penological justifications for imposing a sentence of life with the possibility of parole after 30 years-retribution, deterrence, incapacitation, and rehabilitation-provide an adequate justification to impose the third most severe sentence in Oregon on juvenile offenders who commit aggravated murder, the crime deemed "the *174 most serious" by Oregon's Legislative Assembly. Engweiler v. Persson , 354 Or. 549, 567, 316 P.3d 264 (2013).
4. Miller's holding was hinged on the mandatory nature of the sentence, and Oregon law does not mandate the imposition of a life sentence without parole for juvenile offenders.
Because the lesser sentence of life with the possibility of parole after 30 years is not akin to a sentence of death or life without parole, Oregon's sentencing scheme passes constitutional muster under the Eighth Amendment. Miller expressly held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479, 132 S.Ct. 2455 (emphasis added). Unlike the mandatory sentencing schemes at issue in Miller that required the sentencers to sentence the juvenile offenders to life without the possibility of parole and thus prohibited the sentencers from considering the offenders' youth and its attendant characteristics, Oregon law does not mandate a sentence of life without parole for juvenile offenders who commit aggravated murder or prevent the sentencer from considering the offender's youth and its attendant characteristics before imposing a sentence of life without parole. See Sexton v. Persson , 268 Or. App. 63, 74 n. 8, 341 P.3d 881 (2014), rev. den. , 357 Or. 595, 358 P.3d 1001 (2015) (discussing Oregon's aggravated murder sentencing scheme for juvenile offenders; noting that, under Miller , it would be constitutional to impose a sentence of life without parole on a juvenile for aggravated murder because "the sentencing scheme at issue did not provide for a mandatory sentence of life without the possibility of parole," and because the scheme required a penalty-phase proceeding in which the sentencer "would be presented with, among other things, aggravating and mitigating evidence concerning the defendant's character or background, and circumstances of the offense" in "decid[ing] whether to impose life imprisonment with the possibility of parole or life imprisonment without the possibility of parole" (emphasis in original)).
With respect to Oregon's sentencing scheme, ORS 163.105(1) provides, in part, that, "[e]xcept as otherwise provided in ORS 137.707, when a defendant is convicted of *175 aggravated murder * * * the defendant shall be sentenced, pursuant to ORS 163.150, to death, life imprisonment without the possibility of release or parole or life imprisonment" for "a minimum of 30 years without possibility of parole."[5] In turn, ORS 137.707(2) provides that ORS 163.105 and ORS 163.150 apply when a person convicted of aggravated murder was 15, 16, or 17 years of age at the time that the offense was committed, "except that a person who was under 18 years of age at the time the offense was committed is not subject to a sentence of death." See also ORS 163.150(3)(a)(A) (a "sentence of death shall not be ordered"); ORS 161.620 (youth under 15 years of age that are waived into adult court for committing aggravated murder shall serve a mandatory term of life with the possibility of parole after 30 years under ORS 163.105 (1)(c) ).[6] Under ORS 163.150(3), the sentencer has the discretion to choose between two remaining sentencing options for 15-, 16-, or 17-year-old juveniles who commit aggravated murder-a *692 life sentence without the possibility of parole, or a life sentence with the possibility of parole after 30 years. In deciding which sentence to impose, the court is required to hold a sentencing proceeding in which the defendant is able to present mitigating evidence "as to any matter that the court deems relevant to the sentence." Id .; see also ORS 163.150(1)(c) (mitigating evidence includes, for example, the defendants age and character, as well as the circumstances of the offense).[7] Thus, ORS 163.150 does not contravene the *176 Court's holding in Miller "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," 567 U.S. at 479, 132 S.Ct. 2455, because, unlike the statutory schemes at issue in that case, Oregon's statutory scheme does not "mandate[ ] that each juvenile die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate," id . at 465, 132 S.Ct. 2455 (emphasis in original).[8]
B. Oregon's parole process is constitutional because it gives juvenile offenders a meaningful opportunity to obtain release.
Finally, I conclude that the imposition of a life sentence with the possibility of parole after 30 years under ORS 163.105 and ORS 163.150 is constitutional under Miller because Oregon's parole process fulfills Graham 's requirement that juveniles be given a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," 560 U.S. at 75, 130 S.Ct. 2011, by using "normal parole factors." LeBlanc , --- U.S. ----, 137 S.Ct. at 1729 ; see Graham , 560 U.S. at 75, 79, 130 S.Ct. 2011 ("It is for the State, in the first instance, to explore the means and mechanisms for compliance," but the State cannot deny a nonhomicide juvenile offender "any chance to later demonstrate that he is fit to rejoin society * * *."); Rummel , 445 U.S. at 281, 100 S.Ct. 1133 (the "possibility of parole, however slim, serves to distinguish * * * a person sentenced [to] * * * life without parole").
*177 Under ORS 163.105(2), the "sole issue is whether or not the prisoner is likely to be rehabilitated within a reasonable period of time." To determine whether a prisoner is likely to be rehabilitated within a reasonable amount of time prior to release and should be eligible for parole after 30 years, the Board of Parole and Post-Prison Supervision (the board) considers, among other things, the inmate's involvement in correctional treatment, medical care, educational, vocational, or other training, the inmate's institutional employment history, the inmate's institutional disciplinary conduct, the inmate's maturity, and the nature and circumstances of previous offenses. OAR 255-032-0020. Those factors give a juvenile offender a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation during the juvenile offender's lifetime, *693 and provide the board with an objective way to measure a juvenile offender's failure to mature or incorrigibility.[9] See Miller , 567 U.S. at 477, 132 S.Ct. 2455 (a mandatory life without parole sentence "neglects the circumstances of the homicide offense"); id . at 479-80, 132 S.Ct. 2455 (noting "the great difficulty * * * of distinguishing at this early age between the juvenile whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption" (internal quotation marks omitted)); Graham , 560 U.S. at 73, 130 S.Ct. 2011 (noting that the *178 juvenile offender needs "a chance to demonstrate growth and maturity" and that "prison misbehavior or a failure to mature" can corroborate that a juvenile is incorrigible); id . at 74, 130 S.Ct. 2011 (discussing the importance of vocational training and other rehabilitative services). Furthermore, I point out that a sentence of life with the possibility of parole after 30 years includes initial and subsequent review hearings based on individualized considerations before the parole board that are subject to judicial review and at which the prisoner has the right to be represented by legal counsel, appointed by the board, at the board's expense. ORS 163.105 ; ORS 144.285 ; ORS 144.335. Therefore, Oregon has not denied defendant "any chance to later demonstrate that he is fit to rejoin society based solely on a [ ]homicide crime that he committed while he was a child in the eyes of the law." Graham , 560 U.S. at 79, 130 S.Ct. 2011.[10]
C. Decisions from the United States Circuit Courts of Appeals support my view of the Supreme Court's caselaw in this area.
"As to the meaning of the federal Constitution and laws, * * * we are bound only by the interpretations given those laws by the Supreme Court of the United States. But ordinarily we also respect the decisions of *694 lower federal courts on federal law." State v. Moyle , 299 Or. 691, 707, 705 P.2d 740 (1985). *179 My thinking about the Supreme Court's holding in Miller also finds support in federal caselaw. For example, in U. S. v. Farrar , 876 F.3d 702, 716 (5th Cir. 2017), the court observed that the Supreme "Court has undertaken categorical analysis only for death-penalty cases and those involving juvenile offenders sentenced to life-without-parole; in short, * * * the Court has emphasized that cases involving death-penalty and juvenile offenders are 'different.' " (Quoting Miller , 567 U.S. at 471, 132 S.Ct. 2455 ). See id. (citing U. S. v. Cobler , 748 F.3d 570, 580-81 (4th Cir. 2014), cert. den. , --- U.S. ----, 135 S. Ct. 229, 190 L.Ed.2d 173 (2014) (noting that the "present case involves neither a sentence of death nor a sentence of life imprisonment without parole for a juvenile offender, the only two contexts in which the Supreme Court categorically has deemed sentences unconstitutionally disproportionate"), and U. S. v. Walker , 506 Fed.Appx. 482, 489 (6th Cir. 2012) (the categorical analysis "does not apply in cases where the defendant receives a sentence that is less severe than a life sentence" (internal quotation marks omitted))); c.f. James v. U. S. , 59 A.3d 1233, 1234-37, 1237 n. 3 (DC 2013) (when a juvenile offender appealed a mandatory sentence of life with the possibility of parole after 30 years, the court cautioned that, if it were to ignore the Supreme Court's "limitation to sentences of life without parole," and were to conclude that "the considerations announced as paramount-including 'immaturity, impetuosity and failure to appreciate risks and consequences,' Miller , 132 S.Ct. at 2468 -apply equally to a mandatory thirty years to life sentence" for murder, it would "not [be] clear where this slope would end for it would seem that the same infirmity in thirty years would still exist for a lesser but still substantial term").
Furthermore, the United States Circuit Courts of Appeals "have uniformly declined to apply Miller 's categorical ban to discretionary life sentences" when the sentencer can impose a lesser sentence after taking into account the distinctive qualities of youth. U. S. v. Jefferson , 816 F.3d 1016, 1019 (8th Cir. 2016), cert. den. , --- U.S. ----, 137 S. Ct. 2290, 198 L.Ed.2d 729 (2017) (citing Davis v. McCollum , 798 F.3d 1317, 1321-22, 1321 n. 6 (10th Cir. 2015), cert. den. , --- U.S. ----, 136 S.Ct. 1524, 194 L.Ed.2d 611 (2016) (observing that " Miller invalidated sentencing schemes stripping 'the sentencing authority' of 'discretion to *180 impose a different punishment' than life without the possibility of parole on a juvenile offender" and concluding that Oklahoma's sentencing scheme did not run afoul of Miller because the statute "allowed the sentencing authority discretion to impose life with the possibility of parole when sentencing a person convicted of first-degree murder"),[11] Croft v. Williams , 773 F.3d 170, 171 (7th Cir. 2014) (holding that Miller was inapplicable because "life sentences for murder are discretionary under Illinois law"), Evans-Garcia v. U. S. , 744 F.3d 235, 240-41 (1st Cir. 2014) (concluding that Miller did not apply to a discretionary life without parole sentence where the court took account of the juvenile offender's youth, because " Miller applies if a [defendant] was (1) younger than 18 years old at the time of the crime," and "(2) subject to a mandatory sentence of life in prison without the possibility of parole"), and Bell v. Uribe , 748 F.3d 857, 869, 869 n. 6 (9th Cir. 2014), cert. den. , DeMola v. Johnson , --- U.S. ----, 135 S. Ct. 1545, 191 L.Ed.2d 636 (2015) (concluding that there was no Eighth Amendment violation under Miller where the defendant was sentenced to life without parole after the judge considered mitigating and aggravating factors because California's sentencing scheme was not mandatory in that it provided that the penalty for first-degree murder was "confinement in the state prison for life without the possibility of parole or, at the discretion of the court , 25 years to life" (emphasis in original; internal quotation marks and citation omitted)); see also Malvo v. Mathena , 893 F.3d 265, 275 (4th Cir. 2018), cert. granted , *695 --- U.S. ----, 139 S.Ct. 1317, 203 L.Ed.2d 563, No. 18-217, 2019 WL 1231751 (2019) (the defendant's sentencing proceedings under Virginia law "did not satisfy the requirements of the Eighth Amendment as articulated in Miller and Montgomery " because the sentencing scheme only provided for sentences of death or life without parole, and, therefore, "the jury was not allowed to give a sentence less than life without parole" after considering the juvenile offender's youth); U. S. v. Under Seal , 819 F.3d 715, 719-28 (4th Cir. 2016) (holding that the prosecution of juvenile offenders for murder in aid of racketeering "cannot constitutionally proceed" because, under 18 U.S.C § 1959(a), the only penalties are " 'death or life imprisonment,' " and, *181 "[c]onsequently, life imprisonment [without parole] is the mandatory minimum punishment for this offense" and " Miller and Roper have prohibited juveniles from being sentenced to either of the congressionally authorized punishments for murder in aid of racketeering").[12] *696 *182 As discussed above, defendant was not sentenced to life without parole, and defendant was sentenced under a sentencing scheme that gives the sentencing authority discretion to impose the lesser sentence of life with the possibility of parole after it considers the offender's youth. Thus, the majority's application of Miller under these circumstances is not supported by the foregoing federal caselaw because " Miller did not purport to alter the law governing statutory schemes giving the sentencing authority a choice between imposing life with or without possibility of parole on juvenile offenders." Davis , 798 F.3d at 1321-22.
D. This case demonstrates that Oregon's aggravated murder sentencing scheme complies with Miller's substantive and procedural requirements.
As the Supreme Court clarified in Montgomery , sentencing schemes that impose a mandatory life sentence without the possibility of parole are unconstitutional under the Eighth Amendment because " Miller requires that before sentencing a juvenile to life without parole , the sentencing judge [must] take into account 'how children are different, *183 and how those differences counsel against irrevocably sentencing them to a lifetime in prison." --- U.S. ----, 136 S.Ct. at 733 (emphasis added). Defendant's challenge to Oregon's sentencing scheme fails under Miller because he was not sentenced under a sentencing scheme that mandates life in prison without the possibility of parole; instead, he was sentenced under ORS 163.150 which permitted the court to sentence defendant to life with the possibility of parole after the court considered evidence about defendant's youth and its attendant characteristics.
In this case, the trial court held a "Miller / Montgomery " hearing pursuant to State v. Agee , 358 Or. 325, 364 P.3d 971 (2015), adh'd to on recons. , 358 Or. 749, 370 P.3d 476 (2016), and Atkins , 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335, to "determine, as a matter of law, whether defendant is ineligible for a sentence of life without the possibility of parole." In that hearing, the court considered evidence about defendant's age and personal characteristics, testimony from experts about the distinctive qualities of youth, the circumstances surrounding defendant's commission of the crime, and defendant's efforts at rehabilitation while incarcerated. After considering that evidence, the trial court concluded that defendant's conduct "was a reflection of unfortunate yet transitory immaturity" and that defendant was not "the rare juvenile offender whose crime reflects irreparable corruption or irretrievable depravity so extensive that rehabilitation is impossible." Accordingly, the trial court concluded that defendant fell within the class of juvenile offenders for which a life sentence without parole would be unconstitutional and sentenced defendant to life with the possibility of parole after 30 years.
Defendant does not contend that such a procedure is insufficient to comply with Miller or that such a procedure is impermissible under Oregon's sentencing scheme for aggravated murder. In Montgomery , --- U.S. ----, 136 S.Ct. at 735, the Court clarified that "the procedure [that] Miller prescribes is no different" from the one that it prescribed in Atkins and concluded that "[t]he procedure that Miller prescribes is * * * [a]
*697 hearing where 'youth and its attendant characteristics' are considered * * * to separate those *184 juveniles who may be sentenced to life without parole from those who may not." See id . (the "Court [wa]s careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems"); Atkins , 536 U.S. at 317, 122 S.Ct. 2242 (noting that, with regard to imposing the death penalty on a defendant who is insane or intellectually disabled, the Court has left "to the State[s] the task of developing appropriate ways to enforce the constitutional restriction"); Agee , 358 Or. at 339-66, 364 P.3d 971 (discussing an Atkins , 536 U.S. 304, 122 S.Ct. 2242, hearing in which a trial court determines, as a matter of law, whether the defendant falls within the class of defendants that are ineligible for the death penalty because of an intellectual disability).
Whether the Eighth Amendment prohibits the imposition of a sentence on a defendant because they belong to a particular class "is a legal determination, and not a factual one." Agee , 358 Or. at 365, 364 P.3d 971 ; see Montgomery , --- U.S. ----, 136 S.Ct. at 735 ( Miller does not require a finding of fact regarding a child's incorrigibility). Youth, for purposes of determining whether a defendant is ineligible, as a matter of law, for a life sentence without the possibility of parole, and youth, as one mitigating factor that must be weighed against aggravators before imposing such a sentence, are discrete issues under Miller . See Montgomery , --- U.S. ----, 136 S.Ct. at 734 ( Miller "rendered life without parole an unconstitutional penalty for a class of defendant's because of their status-that is, juvenile offenders whose crime reflect the transient immaturity of youth" (internal quotation marks omitted)); Agee , 358 Or. at 365-66, 364 P.3d 971 (intellectual disability for purposes of determining a defendant's eligibility for the death penalty, and intellectual disability as one mitigator to be weighed against aggravators, are discrete issues). In other words, under Miller , whether a life sentence without parole is categorically unconstitutional to impose on a juvenile offender because his or her crime reflects the transient immaturity of youth (as a substantive matter), and whether a mandatory sentencing scheme is unconstitutional because it precludes the consideration of the mitigating qualities of youth before imposing such a sentence (as a procedural matter), are discrete issues. See *185 Montgomery , --- U.S. ----, 136 S.Ct. at 734-36 (discussing the procedural and substantive components of Miller ).[13] The Supreme Court in Montgomery clarified that the procedure employed by the trial court in this case, to separate out those juveniles who may be sentenced to life without parole from those who may not, is all that is required to comply with Miller 's substantive requirement and, because that is procedurally permissible under ORS 163.150, Oregon's aggravated murder sentencing scheme, as enacted by Oregon's Legislative Assembly, is constitutional as applied to juvenile offenders. See State v. Link , 260 Or. App. 211, 215-17, 317 P.3d 298 (2013) (concluding that defendant was entitled to an opportunity to present evidence and arguments under Miller at his resentencing hearing for aggravated murder); ORS 163.150(1)(a) (the "state and the defendant or the counsel of the defendant shall be permitted to present arguments for or against a sentence of death and for or against a sentence of life imprisonment with or without the possibility of parole").
III. CONCLUSION
Oregon law does not mandate the imposition of a life sentence without the possibility of parole on juvenile offenders that commit aggravated murder because it authorizes the sentencing authority to impose the lesser sentence of life with the possibility of parole. Furthermore, Oregon law requires the sentencer to consider mitigating evidence, including the defendant's age and personal characteristics, before imposing a life sentence *698 without the possibility of parole. Contrary to the majority's holding, Miller does not require Oregon's aggravated murder sentencing scheme to provide that the sentencer must consider youth, and its attendant characteristics, in order to determine whether a less severe sentence than life with the possibility of parole is required simply because that is Oregon's " 'third most severe' " sentence. 297 Or. App. at 147, 441 P.3d at 676 (quoting *186 Harmelin , 501 U.S. at 995-96, 111 S.Ct. 2680 (the Court would not extend the "individualized capital sentencing doctrine" to a sentence of life imprisonment with the possibility of parole simply because it is "unique in that it is the third most severe" sentence); see Reiter v. Sonotone Corp. , 442 U.S. 330, 341, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (cautioning that the language of the Court's opinions should be "read in context," and should "not * * * be parsed through as though we are dealing with the language of a statute").[14]
Because Oregon law does not require the sentencer to impose a sentence of life without the possibility of parole without considering a defendant's youth and its attendant characteristics, I conclude that the application of Oregon's aggravated murder sentencing scheme to juvenile offenders is constitutional under the Eighth Amendment.
I do not reach that conclusion lightly, nor is my dissent meant to endorse the propriety of sentencing juvenile offenders to life with the possibility of parole after 30 years. I simply disagree with the majority about the extent of Miller 's reach to sentencing schemes that do not impose a mandatory sentence of life without parole and, because the imposition of a life sentence with the possibility of parole under ORS 163.150 does not run afoul of the Eighth Amendment under Miller 's holding, I would leave it to Oregonians using the ballot initiative process or the people's representatives in the legislature to determine the appropriateness of sentencing juveniles who are convicted of aggravated murder to life with the possibility of parole after 30 years. See Woodson , 428 U.S. at 294-95, 96 S.Ct. 2978 (noting that "legislative measures adopted *187 by the people's chosen representatives weigh heavily in ascertaining contemporary standards of decency").[15] *699 *188 For the foregoing reasons, I would affirm the trial court's imposition of a life sentence with the possibility of parole after 30 years and, therefore, I respectfully dissent.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Due Process Clause of the Fourteenth Amendment to the United States Constitution "makes the Eighth Amendment's prohibition against * * * cruel and unusual punishments applicable to the States." Cooper Industries, Inc. v. Leatherman Tool Group, Inc. , 532 U.S. 424, 433-34, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001). Furthermore, as noted by the majority, defendant has not developed an independent state constitutional analysis under Article I, section 16, of the Oregon Constitution. 297 Or. App. at 132 n. 2, 441 P.3d at 668 n. 2.

The three general differences between juvenile offenders and adults that the court noted were "the comparative immaturity and irresponsibility of juveniles," that "juveniles are more vulnerable or susceptible to negative influences and outside pressures," and that "the character of a juvenile is not as well formed as that of an adult." Roper , 543 U.S. at 569-70, 125 S.Ct. 1183.

As noted, after Roper , a sentence of life without parole is the harshest term of imprisonment that a juvenile offender can receive under the Eighth Amendment.

The majority concludes that Montgomery has no bearing on this issue because this case comes to us on direct appeal rather than collateral review. 297 Or. App. at 154-56, 441 P.3d at 680-81. I agree that Montgomery does not squarely control the issue in this case. However, as discussed above, Montgomery clarified the substantive and procedural components of Miller 's holding. See Montgomery , --- U.S. ----, 136 S.Ct. at 743-44 (Scalia, J., dissenting) (discussing Montgomery 's impact on Miller 's holding). Furthermore, in my view, Montgomery 's post-conviction remedy is incompatible with the majority's conclusion that Miller renders the imposition of a life sentence with the possibility of parole under ORS 163.150 unconstitutional because it also "ensures that juveniles whose crimes reflected only transient immaturity-and who have since matured-will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id. at ----, 136 S.Ct. at 736.

Although defendant committed his crimes in 2001, I cite the current version of Oregon's aggravated murder sentencing scheme because the subsequent amendments do not affect my analysis.

Thus, Oregon's Legislative Assembly has considered youth and its attendant characteristics by limiting the sentence for aggravated murder to life with the possibility of parole for juvenile offenders under the age of 15, and by making 15-, 16-, and 17-year-old juveniles ineligible for the death penalty. As outlined in this dissent, the option to impose a life sentence without parole on 15-, 16-, and 17-year-old juvenile homicide offenders is permissible under Miller , as long as the sentencing authority has the ability to impose a lesser sentence after considering the juvenile offender's youth.

ORS 163.150(3)(b) provides that a trial court shall sentence a juvenile offender to life without the possibility of parole unless "10 or more members of the jury find there are sufficient mitigating circumstances to warrant life imprisonment with the possibility of parole" after 30 years. As we noted in defendant's previous appeal, there is a qualitative difference between the "mandatory true life sentence" that the defendant was subjected to in Miller and a "presumptive true life sentence" under ORS 163.150. State v. Link , 260 Or. App. 211, 216, 317 P.3d 298 (2013) (emphasis in original).

As noted by the Court in Miller , Oregon is not one of the 29 states, which included Alabama, with a sentencing scheme that imposes the mandatory life without parole sentence that the Court held was unconstitutional. 567 U.S. at 483 n. 10, 132 S.Ct. 2455 (citing Alabama's brief at 25). Instead, Oregon is among the jurisdictions that "make life without parole discretionary for juveniles," and Oregon does not authorize that sentence for children under 15 years of age. Id . As the Court noted, "only about 15% of all juvenile life-without-parole sentences come from those * * * jurisdictions, while 85% come from the 29 mandatory ones." Id . The Court observed that "[t]hat figure indicates that when given the choice, sentencers impose life without parole on children relatively rarely." Id . Accordingly, instead of including those jurisdictions with discretionary life without parole sentences in its categorical ban, the Court concluded only "that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," life without the possibility of parole. Id . at 489, 132 S.Ct. 2455.

The majority asserts that Oregon's parole process "undercut[s] the essence of Miller " because the "transient qualities [of youth] could hardly be said to be fully considered when they are but a distant memory." 297 Or. App. at 150, 441 P.3d at 678. In my view, Oregon's aggravated murder parole process allows the juvenile offender who submits that he has evolved from a troubled, misguided youth to a model member of the prison community, the opportunity to "demonstrate the truth of Miller 's central intuition-that children who commit even heinous crimes are capable of change." Montgomery , --- U.S. ----, 136 S.Ct. at 736 ; see also Graham , 560 U.S. at 75, 130 S.Ct. 2011 (a state must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"). Moreover, if a juvenile offender still exhibits the impulsive qualities of youth years into adulthood and continues to refuse to accept moral responsibility for a "truly horrifying" crime, it can serve as an objective indication to the parole board that the offender has failed to mature or "atone for [their] crimes and learn from [their] mistakes," and "may turn out to be irredeemable, * * * thus deserving of incarceration for the duration of their li[fe]," id . at 75, 79, 130 S.Ct. 2011. It is true, as the majority points out, that a juvenile offender has a "decreased moral responsibility due to youth," 297 Or. App. at 154, 441 P.3d at 680, but that is not a basis for one to refuse to accept responsibility for one's own actions, especially as a juvenile offender matures and he or she has time to reflect back on those actions as an adult. See Graham , 560 U.S. at 79, 130 S.Ct. 2011 ("Maturity can lead to * * * considered reflection which is the foundation for remorse, renewal, and rehabilitation.").

I reject defendant's argument that the imposition of a life sentence with the possibility of parole amounts to the imposition of a life sentence without parole under ORS 163.105. According to defendant, the imposition of a sentence of life without the possibility of parole is equivalent to a sentence of life with the possibility of parole after 30 years because the burden is on the prisoner to convince the parole board that "the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole," and because the board "convert[s] the terms of the prisoner's confinement to life imprisonment with the possibility of parole." ORS 163.105(3).
Defendant cannot escape the reality that ORS 163.105 allows for the imposition of two life sentences of a very different nature. A sentence imposed under ORS 163.105(1)(b) precludes "the possibility of release or parole," whereas a sentence imposed under ORS 163.105(1)(c) expressly provides for the possibility of parole after "a minimum of 30 years." Given the different nature of those sentences discussed above, I see no basis in the Court's decisions to treat those sentences as equivalent under the Eighth Amendment, especially because the Court has left it to "the State[s], in the first instance, to explore the means and mechanisms for" providing juvenile offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham , 560 U.S. at 75, 130 S.Ct. 2011.

See Okla. Stat. tit. 21, § 701.9(A) (1991) (providing that a defendant convicted of first-degree murder "shall be punished by death, by imprisonment for life without parole or by imprisonment for life").

Additionally, state courts have held that the following sentences are constitutional to impose on juvenile homicide offenders under Miller , which include discretionary life without parole sentences with an individual assessment of the offender's youth and lesser mandatory minimum sentences that provide a meaningful opportunity for release:
Wilkerson v. State , --- So. 3d ----, ----, CR-17-0082, 2018 WL 6010590 at *6-21 (Ala. Crim. App. Nov. 16, 2018) (discretionary life without parole); State v. Vera , 235 Ariz. 571, 574-78, 334 P.3d 754, 757-61 (Ariz. Ct. App. 2014), cert. den. , --- U.S. ----, 136 S. Ct. 121, 193 L.Ed.2d 95 (2015) (mandatory minimum of life with the possibility of parole after 25 years); Johnson v. State , 2018 Ark. 168, 546 S.W.3d 470, 471 (2018) (life with the possibility of parole after 25 years); People v. Franklin , 63 Cal. 4th 261, 273-87, 370 P.3d 1053, 1058-67, 202 Cal.Rptr.3d 496 (2016), cert. den. , --- U.S. ----, 137 S. Ct. 573, 196 L.Ed.2d 450 (2016) (mandatory life with the possibility of parole after 25 years); People v. Davis , 429 P.3d 82, 91-95 (Colo. Ct. App. 2018), cert. den. , --- P.3d ----, No 18SC848, 2019 WL 670636 (Colo. Feb. 19, 2019) (mandatory minimum of life with the possibility of parole after 40 years); State v. Delgado , 323 Conn. 801, 809-16, 151 A.3d 345, 350-55 (2016) (65 years with the possibility of parole after 30 years); Burrell v. State , 207 A.3d 137, 139-47, No. 302, 2018, 2019 WL 1109497 at *1-7 (Del. Mar. 11, 2019) (mandatory minimum of 25 years to life); James , 59 A.3d at 1235-39 (mandatory life with the possibility of parole after 30 years); State v. Michel , 257 So.3d 3, 4-8 (Fla. 2018), cert. den. , --- U.S. ----, 139 S.Ct. 1401, 203 L.Ed.2d 630, 2019 WL 936627 (Mar. 25, 2019) (mandatory life with the possibility of parole after 25 years); Veal v. State , 303 Ga. 18, 18-20, 810 S.E.2d 127, 128-29 (2018), cert. den. , --- U.S. ----, 139 S. Ct. 320, 202 L.Ed.2d 218 (2018) (life with the possibility of parole after 60 years); State v. Tran , 138 Haw. 298, 301-07, 378 P.3d 1014, 1017-23 (Haw. Ct. App. 2016) (mandatory minimum of life with the possibility of parole); Johnson v. State , 162 Idaho 213, 224-26, 395 P.3d 1246, 1257-59 (Idaho 2017), cert. den. , --- U.S. ----, 138 S. Ct. 470, 199 L.Ed.2d 357 (2017) (discretionary life without parole); People v. Holman , 418 Ill.Dec. 889, 91 N.E.3d 849, 852-65 (Ill. 2017), cert. den. , --- U.S. ----, 138 S. Ct. 937, 200 L.Ed.2d 212 (2018) (discretionary life without parole); Conley v. State , 972 N.E.2d 864, 877-79 (Ind. 2012) (discretionary life without parole); State v. Harrison , 914 N.W.2d 178, 196-202 (Iowa 2018) (life with the immediate possibility of parole); State v. Brown , 300 Kan. 542, 562-64, 331 P.3d 781, 796-97 (2014) (mandatory life with the possibility of parole after 20 years); Phon v. Commonwealth , 545 S.W.3d 284, 291-98 (Ky. 2018) (discretionary life without parole); State v. Baker , 154 So.3d 561, 567-68 (La. Ct. App. 2014), writ den , 170 So.3d 159 (La. 2015) (life imprisonment at hard labor with the possibility of parole after 35 years); Com. v. Okoro , 471 Mass. 51, 52-62, 26 N.E.3d 1092, 1094-1101 (2015) (mandatory life with possibility of parole after 15 years); People v. Skinner , 502 Mich. 89, 97-138, 917 N.W.2d 292, 296-318 (2018) (discretionary life without parole); State v. Vang , 847 N.W.2d 248, 262-63 (Minn. 2014) (mandatory life with the possibility of parole after 30 years); Chandler v. State , 242 So.3d 65, 67-71 (Miss. 2018), cert. den. , --- U.S. ----, 139 S. Ct. 790, 202 L.Ed.2d 569 (2019) (discretionary life without parole); State v. Hart , 404 S.W.3d 232, 236-47 (Mo. 2013) (life without parole); Steilman v. Michael , 389 Mont. 512, 513-22, 407 P.3d 313, 315-20 (2017), cert. den. , --- U.S. ----, 138 S.Ct. 1999, 201 L.Ed.2d 260 (2018) (110 years with the possibility of release after 55 years); State v. Nollen , 296 Neb 94, 114-22, 892 N.W.2d 81, 95-99 (2017), cert. den. , --- U.S. ----, 138 S. Ct. 165, 199 L.Ed.2d 98 (2017) (90-years to life with the possibility of parole after 45 years); State v. Bass , 457 N.J. Super. 1, 4-14, 197 A.3d 192, 193-200 (N.J. Super. Ct. App. Div. 2018) (life with the possibility of parole after 35 years); People v. Aponte , 42 Misc.3d 868, 981 N.Y.S.2d 902, 903-06 (N.Y. Sup. Ct. 2013) (mandatory minimum of life with the possibility of parole after 25 years); State v. Jefferson , 798 S.E.2d 121, 122-26 (NC. Ct. App. 2018), rev. den. , 370 N.C. 214, 804 S.E.2d 527 (2017), cert. den. , --- U.S. ----, 138 S. Ct. 1169, 200 L.Ed.2d 318 (2018) (mandatory life with the possibility of parole after 25 years); Garcia v. State , 903 N.W.2d 503, 509-13 (N.D. 2017) (discretionary life without parole); State v. Hawkins , 55 N.E.3d 505, 509-10 (Ohio. Ct. App. 2015) (life with the possibility of parole after 33 years); Commonwealth v. White , 193 A.3d 977, 982-86 (Pa. Super. Ct. 2018) (mandatory minimum of life with the possibility of parole after 35 years, and mandatory minimum of life with the possibility of parole after 45 years (citing Commonwealth v. Bebout , 186 A.3d 462, 467-70 (Pa. Super. Ct. 2018) ); Aiken v. Byars , 410 S.C. 534, 545, 765 S.E.2d 572, 578 (S.C. 2014), cert. den. , --- U.S. ----, 135 S. Ct. 2379, 192 L.Ed.2d 179 (2015) (discretionary life without parole); State v. Charles , 892 N.W.2d 915, 919-23 (S.D. 2017), cert. den. , --- U.S. ----, 138 S. Ct. 407, 199 L.Ed.2d 299 (2017) (92-years with the possibility of parole at the age of 60); Arredondo v. State , 406 S.W.3d 300, 304-07 (Tex. Ct. App. 2013) (discretionary life without parole); State v. Houston , 353 P.3d 55, 72-77 (Utah 2015), cert. den. , --- U.S. ----, 136 S. Ct. 2005, 195 L.Ed.2d 221 (2016) (discretionary life without parole); Johnson v. Commonwealth , 292 Va. 772, 780-82, 793 S.E.2d 326, 331-32 (2016), cert. den. , --- U.S. ----, 138 S. Ct. 643, 199 L.Ed.2d 528 (2018) (life with the possibility of geriatric release at the age of 60); State v. Barbeau , 370 Wis.2d 736, 744-70, 883 N.W.2d 520, 524-35 (Wis. Ct. App. 2016), rev. den. , 372 Wis.2d 275, 891 N.W.2d 408 (Wis. 2016), cert. den. , --- U.S. ----, 137 S. Ct. 821, 196 L.Ed.2d 601 (2017) (discretionary life without parole with a mandatory minimum of life with the possibility of parole after 20 years).
Thus, as the foregoing federal and state cases illustrate, there is not "a national consensus against the sentencing practice at issue." Graham , 560 U.S. at 61, 130 S.Ct. 2011.

I do not mean to foreclose the possibility that a jury could be properly instructed to resolve the legal question of whether a juvenile should be spared from a sentence of life without parole because he or she is not the rare juvenile offender who is irreparably corrupt. See Agee , 358 Or. at 366 n. 28, 364 P.3d 971 ("We do not mean to suggest that it would be error for a trial court to permit the jury to decide the legal question of intellectual disability.").

Because defendant does not fit into the categorical exceptions of Roper , Graham , or Miller , defendant could, of course, bring an as applied challenge under Miller to argue that a sentence of life with the possibility of parole after 30 years is unconstitutional because of his youth and the specific circumstances of his case. The court would then consider those circumstances to determine, as a matter of law, whether such a sentence is grossly disproportionate under the Eighth Amendment. See State v. Allen , 294 Or. App. 301, 314-16, 432 P.3d 250 (2018) (discussing an as applied challenge under Miller to a mandatory minimum sentence other than life without the possibility of parole). On appeal, defendant does not raise an as applied challenge or argue that his particular circumstances could not lead to a life sentence with the possibility of parole after 30 years. I do not address that issue. Rather, I reject defendant's categorical argument that a sentence of life with the possibility of parole after 30 years is unconstitutional to impose on any juvenile offender under ORS 163.150.

Although nearly seven years have passed since the legislature was alerted by Miller to the constitutional problem posed by statutes that impose a mandatory sentence of life imprisonment without parole, the legislature has declined to amend or repeal the two discretionary life sentences that apply to juveniles convicted of aggravated murder. Now that the majority has extended Miller to hold that the only penalties that the legislature chose for the crime of aggravated murder are unconstitutional to impose on any juvenile offender-even after the court holds a Miller / Montgomery hearing to consider the offender's youth-there is no longer a legislatively authorized penalty for that crime. See OAR 213-004-0003 (the offense of aggravated murder is "set by statute" and is not ranked on the crime seriousness scale of the sentencing guidelines); U. S. v. Evans , 333 U.S. 483, 495, 68 S.Ct. 634, 92 L.Ed. 823 (1948) (observing that manipulating a statute to fill in a missing penalty provision "is a task outside the bounds of judicial interpretation"); Under Seal , 819 F.3d at 725, 725 n. 13 (concluding that there were no longer any constitutional penalties to impose on juveniles for the crime of murder in aid of racketeering after Miller , and stating that the judicial creation of an appropriate punishment in the first instance would be "nothing less than judicial legislation pure and simple," because it is Congress's "place under the Constitution's separation of powers to do so" (internal quotation marks omitted)); State v. Leathers , 271 Or. 236, 239-40, 531 P.2d 901 (1975) ("When a court acts beyond the bounds of its sentencing authority, it infringes upon the power of the legislature to determine the manner of punishment. A sentence must be in conformity with the governing statute; any non-conforming sentence is void for lack of authority and thus totally without legal effect."); State v. Cotton , 240 Or. 252, 254, 400 P.2d 1022 (1965) ("The court in imposing punishment for a criminal offense is limited strictly to the provisions of the applicable statute, and any deviation from the statute in the mode, extent or place of punishment renders the judgment void."); State v. Horsley , 168 Or. App. 559, 562, 7 P.3d 646 (2000) ("A trial court has a duty to pass sentence in accordance with the pertinent sentencing statutes."); State v. Trice , 146 Or. App. 15, 21, 933 P.2d 345, rev. den. , 325 Or. 280, 936 P.2d 987 (1997) (concluding that, "with the enactment of ORS 137.123, the legislature intended to eliminate any 'inherent authority' that the court might have with respect to [imposing] consecutive sentences").
Given the majority's choice to not "decide the full contours of what constitutes the harshest or most severe criminal penalties in Oregon," it is unclear to me why the fourth most severe sentence in Oregon-a mandatory sentence of life with the possibility of parole after 25 years for the lesser included offense of murder under ORS 163.115(5) -would not suffer from the same constitutional infirmities that the majority perceives with defendant's sentence of life with the possibility of parole after 30 years under ORS 163.150. 297 Or. App. at 147-48, 441 P.3d at 676-77. Likewise, it is unclear to me how the unconstitutional penalties of the aggravated murder sentencing scheme could be severed in a way that still makes the scheme operable and that also makes the sentencing scheme's penalties constitutional under the majority's holding. See Standard Lbr. Co. v. Pierce et al. , 112 Or. 314, 340, 228 P. 812 (1924) (where "it is not possible to sever that which is unconstitutional from the rest of the act, then the whole statute fails"); State v. Borowski , 231 Or. App. 511, 526, 220 P.3d 100 (2009) (we prefer to sever the unconstitutional provision and salvage the remainder, and the "legislature has codified that preference at ORS 174.040"). Thus, following guidance from the parties at defendant's resentencing, the trial court will need to determine how to impose a constitutional sentence for defendant's crime of conviction, but I fear that the majority's newly adopted expansion of Miller , to include a life sentence that provides for the possibility of parole, will create more sentencing issues than it will solve, as the majority's opinion does not apply the analysis that the United States Supreme Court has derived from the constitutional command of the Eighth Amendment.